Carole KOZERA, etc., Plaintiffs,
Appellees,

v.

Thomas S. SPIRITO, et al., Defendants
and Third-Party Plaintiffs, Appellants,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES, Third-Party
Defendant, Appellee.

Geraldine BISHOP, Plaintiff, Appellee,

v.

Thomas S. SPIRITO, Defendant and
Third-Party Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HU-
MAN SERVICES, Defendant,
Appellee.

Nos. 83–1250, 83–1251.

United States Court of Appeals,
First Circuit.

Argued Oct. 6, 1983.

Decided Dec. 16, 1983.

H. Reed Witherby, Asst. Atty. Gen., Boston, Mass., Government Bureau, with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for Department of Public Welfare, et al.

Edward R. Cohen, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., William F. Weld, U.S. Atty., Boston, Mass., and Robert S. Greenspan, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., were on brief, for Secretary of Health and Human Services.

Before CAMPBELL, Chief Judge, GIBSON,* Senior Judge, and COFFIN, Circuit Judge.

COFFIN, Circuit Judge.

This case presents the question whether the federal district court properly dismissed, on grounds of sovereign immunity, a third-party complaint filed by the Massachusetts Department of Public Welfare and its Commissioner ("Commissioner") against the Secretary of Health and Human Services ("Secretary").

This litigation traces its genesis to a 1981 amendment to a portion of the Social Security Act, 42 U.S.C. § 602(a)(31), which requires states, when determining eligibility for benefits under the Aid to Families with Dependent Children (AFDC) program, to take into account the income (after certain deductions) of a dependent child's stepparent living in the same home as the child. *See* The Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub.L. No. 97-35, § 2306(a), 95 Stat. 846 (codified at 42 U.S.C. § 602(a)(31)); 45 C.F.R. § 233.20(a)(3)(xiv) (1982) (implementing regulation).

Prior to this amendment, a state could not deem the income of a stepparent to be available to a dependent child unless the state had a law of general applicability holding the stepparent legally responsible for support to the same extent as natural or adoptive parents. The amended federal statute and its implementing regulation now require as a condition for federal financial participation (FFP) in a state's welfare program that states attribute the income of stepparents to recipient children. In March 1982, the Massachusetts Department of Public Welfare promulgated a regulation, 106 C.M.R. § 304.235 (1982), which

---

* Of the Eighth Circuit, sitting by designation.

tracks the provisions of the federal statute and regulation.

Pursuant to the Department of Public Welfare's newly promulgated stepparent income attribution requirement, the Commissioner of Public Welfare terminated the welfare benefits of the children of plaintiffs Carole Kozera and Geraldine Bishop. Plaintiffs filed separate complaints against the Commissioner in the Hampshire County Superior Court, alleging that the Commissioner's decision to terminate benefits for plaintiffs' children violated federal law, state regulations, state law, public policy embodied in the AFDC program, and various federal and state constitutional provisions.

■ The Commissioner then filed a third-party complaint in state court against the Secretary of Health and Human Services, alleging that the challenged state regulation was promulgated to conform to a federal statute and its implementing federal regulation. The third-party complaint further alleged that if the state regulation violated the federal Constitution or statute, then so did the federal regulation to which the state regulation conformed. The Secretary removed the case to federal district court under 28 U.S.C. § 1442(a) and moved to dismiss the third-party complaint on sovereign immunity grounds. The district court granted the Secretary's motion to dismiss and remanded the case—the AFDC claimants against the state agency and its Commissioner—to state court. The Commissioner appeals the district court's dismissal of the Secretary.[1]

**I. Standing**

■ The Secretary argues that this appeal should be barred at the threshold, because the Commissioner lacks standing to assert the claims raised in his third-party complaint. The Secretary does not directly allege that the state has not suffered an injury-in-fact necessary to satisfy the irreducible Article III requirements for standing to sue in federal court. Nor could the Secretary so allege.

The Commissioner's third-party claim against the Secretary is contingent upon the success of the original plaintiffs' action against the Commissioner. If the district court held the Massachusetts stepparent deeming regulation invalid on federal constitutional grounds, the Commissioner would have to eliminate the regulation. The Massachusetts AFDC eligibility regulations would no longer comply with federal requirements. The Secretary would then be obligated to terminate payment of federal financial participation to Massachusetts either entirely or only as regards state outlays made in noncompliance with the federal stepparent deeming regulation. *See New Jersey v. Department of Health and Human Services,* 670 F.2d 1262, 1269 (3d Cir.1981); 42 U.S.C. § 604(a)(2); 45 C.F.R. § 201.6(a), (e) (1982). The Secretary's action would deprive the state of funds to which it would, but for the court ruling, have been entitled and would diminish Massachusetts' ability to provide welfare assistance to families of its needy children. This result, while necessarily hypothetical—since we must determine the propriety of the

---

1. This court has appellate jurisdiction over this case. In the usual case, a federal district court order remanding a case to state court from which it was removed is not reviewable on appeal or otherwise. 28 U.S.C. § 1447(d); *American Home Assurance Co. v. Insular Underwriters Corp.,* 494 F.2d 317, 319 (1st Cir. 1974) (well-established policy against appellate review of remand orders).

However, an order of dismissal—such as the dismissal (on sovereign immunity grounds) of the Secretary of HHS from this case—that results in a remand may be reviewed, because the order would be functionally non-reviewable if the rule were otherwise. *See Waco v. United*

*States Fidelity & Guaranty Co.,* 293 U.S. 140, 143, 55 S.Ct. 6, 7, 79 L.Ed. 244 (1934) ("in logic and in fact the decree of dismissal preceded that of remand and was made by the District Court while it had control of the cause. Indisputably this order is the subject of an appeal...."); 14 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure: Jurisdiction § 3740, at 768 (1976). This exception to § 1447(d) has continuing vitality. *See Armstrong v. Alabama Power Co.,* 667 F.2d 1385, 1387 (11th Cir.1982) (district court's order dismissing United States as a party to a removed suit was appealable, notwithstanding that suit was subsequently remanded to state court).

dismissal before plaintiffs' lawsuit has ended—constitutes a sufficiently distinct and palpable risk of injury to the Commissioner redressable by the district court. If the Secretary is included in the suit as a third-party defendant, and if the original plaintiffs prevail on their constitutional claims, then the federal statute and regulation will fall along with the Massachusetts regulation, thus freeing the state from the squeeze play caused by a court order irreconcilable with federal statutory and regulatory requirements. Thus, a case or controversy in the constitutional sense exists between the Secretary and the Commissioner. *See Craig v. Boren,* 429 U.S. 190, 194, 97 S.Ct. 451, 455, 50 L.Ed.2d 397 (1976); *Singleton v. Wulff,* 428 U.S. 106, 113, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976).

The Secretary contends that despite the Commissioner's satisfaction of Article III standing requirements, the Commissioner has nonetheless failed to overcome prudential barriers to standing. The Secretary argues essentially that the third-party complaint merely repeats the allegations of the original complaint filed by claimants against the Commissioner and that the Commissioner has not alleged any independent grounds for relief beyond those alleged by the original plaintiffs. Therefore, the Secretary concludes, prudential standing rules bar the Commissioner's attempt to rest his claim to relief on the legal rights or interests of the original plaintiffs. *See Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *Friedman v. Harold,* 638 F.2d 262, 265 (1st Cir.1981).

Under the circumstances presented by this case, however, invoking prudential limitations on the Commissioner's assertion of *jus tertii* would "serve no functional purpose". *See City of Revere v. Massachusetts General Hospital,* —— U.S. ——, ——, 103 S.Ct. 2979, 2982, 77 L.Ed.2d 605 (1983) (quoting *Craig v. Boren,* 429 U.S. at 194, 97 S.Ct. at 455). This is not a case like *Friedman v. Harold,* 638 F.2d at 265–66, in which the litigant (Commissioner) seeks to assert the rights of a third party (AFDC recipients) in a manner hostile to the interests of the third party. The Commissioner's third-party complaint is contingent on a finding of invalidity of the state regulation. The third-party complaint alleges that if the state regulation violates the federal statute or Constitution, then so does the federal regulation to which the state regulation conformed. The third-party action would neither attack the original plaintiffs' interests nor force the adjudication of unnecessary constitutional questions.[2] *Cf. Singleton v. Wulff,* 428 U.S. at 113–14, 96 S.Ct. at 2873–74 (plurality opinion). The third-party action would likewise not entail "unwarranted intervention into controversies where the applicable constitutional questions are ill-defined and speculative". *Craig v. Boren,* 429 U.S. at 193, 97 S.Ct. at 455. The original plaintiffs would have already presented the factual context and the constitutional questions to the court.

The Secretary suggests that the third-party complaint stumbles on another prudential barrier by failing to "fall within 'the zone of interests to be protected or regulated by the statute or constitutional guaran-

**2.** We can assume, for our analysis of the standing of the third-party plaintiff, that the district court would invalidate the state eligibility regulation on federal constitutional or statutory grounds. If, by contrast, the district court found that the state regulation ran afoul of state statutes or the state constitution, the court could thereby avoid possible federal constitutional issues. For the Commissioner (as third-party plaintiff) then to assert the original plaintiffs' interests while making a federal constitutional argument against the federal regulation would transgress the rule that courts should avoid decision of unnecessary constitutional questions.

However, a party's standing should not be contingent on the decision on the merits. The inquiry into standing is prior to and distinct from the adjudication of alleged causes of action. *See Davis v. Passman,* 442 U.S. 228, 239–40 n. 18, 99 S.Ct. 2264, 2273–74 n. 18, 60 L.Ed.2d 846 (1979) (distinguishing "standing" from "cause of action"); *NAACP v. Harris,* 607 F.2d 514, 522–23 (1st Cir.1979) (court should not address merits in determining standing). Where, as here, the federal constitutional claim is not patently frivolous, the unity of the plaintiffs' and third-party plaintiffs' claims provide sufficient reason to override the none-too-firm rule against *jus tertii*.

tee in question.'" *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982) (quoting *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970)). The interest that the Commissioner seeks to protect—the state's interest in continued federal financial participation—falls within the zone of interests protected by the statute. *See* 42 U.S.C. § 601 (purpose of AFDC program to channel federal funds to states to assist them in providing for their needy dependent children); *cf. Shea v. Vialpando,* 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120 (1974) (quoting *King v. Smith,* 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968)) (AFDC program "is based on a scheme of cooperative federalism").

*Pennsylvania v. Kleppe,* 533 F.2d 668 (D.C.Cir.), *cert. denied,* 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 584 (1976), provides an instructive contrast to the case at bar. In *Kleppe,* the state brought suit against the Small Business Administration (SBA), seeking to enjoin the SBA from discontinuing its hurricane relief effort in Pennsylvania. The court found that the state's alleged injuries did not fall within the zone of interests protected by the Small Business Act, 15 U.S.C. §§ 631–647 (1970), which did not have the purpose of aiding states. "Unlike many federal assistance programs, no aid is authorized to be channeled through state agencies or coordinated with state programs....

....

... [I]t seems appropriate to require some fairly direct link between the state's status as a collector and recipient of revenues and the legislative or administrative action being challenged." 533 F.2d at 672 (footnote omitted). By contrast, the AFDC program, with the express purpose of assisting states in caring for needy children, channels money through the states. *See* 42 U.S.C. § 603(a).

We are bolstered in our conclusion that the Commissioner has standing as a third-party plaintiff in this case by recent cases in which federal courts have found no standing problem when states have brought similar third-party complaints against the Secretary of HHS following challenges to state regulations implementing federal directives under the AFDC or Medicaid programs. *See Williamson v. Gibbs,* 562 F.Supp. 687 (W.D.Wash.1983); *Turner v. Woods,* 559 F.Supp. 603, 607, 616 (N.D.Cal. 1982) (judgment for defendant state against third-party defendant Secretary of HHS), *aff'd sub nom. Turner v. Prod,* 707 F.2d 1109 (9th Cir.1983); *Curry v. Dempsey,* 520 F.Supp. 70, 75 (W.D.Mich.1981) (ordering third-party defendant Secretary of HHS to pay federal financial participation to defendant state department of social services), *rev'd,* 701 F.2d 580 (6th Cir.1983) (reversing on the merits with no mention of standing).

## II. Sovereign Immunity

■ The district court invoked the doctrine of sovereign immunity in dismissing the third-party complaint, which named the Secretary of HHS as third-party defendant.[3] Sovereign immunity generally bars suits against the United States or its agencies, whether brought by a private party or by a state. *Block v. North Dakota,* —— U.S. ——, ——, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983); *Massachusetts v. United States Veterans Administration,* 541 F.2d 119, 123 (1st Cir.1976). Sovereign immunity may, in the proper case, similarly bar a suit brought against a federal officer in her official capacity. *See, e.g., Burgos v. Milton,* 709 F.2d 1, 2–3 (1st Cir.1983) (sovereign immunity barred suit for damages against federal officials).

---

**3.** The third-party complaints in *Kozera* and *Bishop* did not name the Department of HHS or the United States as third-party defendants. The Secretary's brief on appeal nonetheless refers to the third-party defendant (the Secretary) as the "United States". Given that the identity of the defendant makes a world of difference in contemporary sovereign immunity analysis, the Secretary's choice of terms is somewhat unfortunate.

## A. The *Larson* Exception

■ Several well-established exceptions to the doctrine of sovereign immunity limit that doctrine's scope in injunctive suits against federal officials. The prohibition on suits against the United States does not apply in suits where plaintiffs sue for specific relief against federal officers, alleging either (1) that the officers have acted beyond their statutory authority or (2) that the statute conferring power upon the officers is unconstitutional. *Dugan v. Rank,* 372 U.S. 609, 621–22, 83 S.Ct. 999, 1006–07, 10 L.Ed.2d 15 (1963); *Malone v. Bowdoin,* 369 U.S. 643, 647–48, 82 S.Ct. 980, 983–84, 8 L.Ed.2d 168 (1962); *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689–90, 69 S.Ct. 1457, 1461–62, 93 L.Ed. 1628 (1949). "[I]njunctions against the threatened enforcement of unconstitutional statutes are familiar examples of this [second] type.... [T]he conduct against which the specific relief is sought is beyond the officer's power and is, therefore, not the conduct of the sovereign." *Larson,* 337 U.S. at 690, 69 S.Ct. at 1461. The exceptions recognized in *Larson, Malone,* and *Dugan* remain good law. *See, e.g., Hampton v. Mow Sun Wong,* 426 U.S. 88, 93 n. 5, 96 S.Ct. 1895, 1900 n. 5, 48 L.Ed.2d 495 (1976) (affirming *Mow Sun Wong v. Hampton,* 333 F.Supp. 527, 529–30 (N.D.Cal.1971)); *State of Wisconsin v. Baker,* 698 F.2d 1323, 1332 (7th Cir.1983), *cert. denied,* —— U.S. ——, 103 S.Ct. 3537, 77 L.Ed.2d 1388 (1983); *MacFarlane v. Grasso,* 696 F.2d 217, 225 (2d Cir. 1982).

■ The third-party complaints in the two cases before this court both requested, *inter alia,* that "[i]f a judgment is entered declaring the state regulation violative of federal law or unconstitutional, [the court should] enter a judgment declaring the applicable federal regulations so violative or unconstitutional to the same extent; ..." The third-party complaint would thus seem

to fall within the second *Larson* exception, which permits suits against federal officials for injunctive relief against threatened enforcement of unconstitutional statutes.

## B. The Prospective/Retroactive Distinction

The Secretary argues that notwithstanding the request for injunctive relief in the Commissioner's third-party complaint, the Commissioner in reality seeks a monetary award from the federal treasury in the form of federal financial participation. The Secretary reasons that because the desire for an uninterrupted flow of federal funds to the state's AFDC program motivated the Commissioner to bring suit against the Secretary, and because an injunction against enforcement of the stepparent deeming regulation would result in higher state payments of AFDC and concomitant higher levels of federal financial participation, the suit therefore is in substance, if not in form, a suit for damages.

While the Secretary's argument has some common sense appeal, it does not comport with controlling precedent. *See Quern v. Jordan,* 440 U.S. 332, 337, 347–49, 99 S.Ct. 1139, 1143, 1148–49, 59 L.Ed.2d 358 (1979); *Milliken v. Bradley (Milliken II),* 433 U.S. 267, 288–90, 97 S.Ct. 2749, 2761–62, 53 L.Ed.2d 745 (1977); *Edelman v. Jordan,* 415 U.S. 651, 667–68, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974); *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Coalition for Basic Human Needs v. King,* 654 F.2d 838, 842 (1st Cir.1981).[4] These cases establish a distinction—one that admittedly elevates form over function—between prospective relief (that may or may not have a substantial "ancillary" impact on the public fisc) and retrospective relief, i.e., damages. A federal officer sued for damages in her official capacity is immune from suit absent an express consent to suit or

---

4. Identical principles of sovereign immunity limit suits against the states and the United States. *See Florida Department of State v. Treasure Salvors,* —— U.S. ——, ——, 102 S.Ct. 3304, 3315, 73 L.Ed.2d 1057 (1982) (plurality opinion) (quoting *Tindal v. Wesley,* 167

U.S. 204, 213, 17 S.Ct. 770, 774, 42 L.Ed. 137 (1897)). Thus, although the cases cited above concerned the immunity of state officials from suit under the Eleventh Amendment, these cases apply with full force to the instant suit against a federal official.

waiver of immunity. *Massachusetts v. United States Veterans Administration,* 541 F.2d at 123.

The Court in *Edelman v. Jordan* held that retroactive welfare benefits awarded by a federal district court for wrongful denial by state officials of previously accrued welfare benefits violated the Eleventh Amendment, notwithstanding the "equitable restitution" label that the court of appeals used to describe the district court's remedy. The Court noted that fiscal consequences to a state treasury did not automatically trigger Eleventh Amendment immunity. Rather, such ancillary impacts on state treasuries could necessarily result from compliance with court orders that by their terms were prospective in nature. 415 U.S. at 667–68, 94 S.Ct. at 1357–58.

In *Quern v. Jordan,* the Court held that a federal court could order state officials to send explanatory notices to plaintiff class members advising them of available state administrative procedures for determination of retroactive welfare benefits. The Court rejected the state's argument that giving the proposed notice would lead inexorably to payments from the state treasury for retroactive benefits and that therefore the notice amounted to a monetary award. 440 U.S. at 347, 99 S.Ct. at 1148.

Similarly, in *Milliken II,* the Court upheld a federal injunction requiring state defendants to pay half the cost of remedial educational programs as part of a desegregation remedy. The Court determined that the order to pay future costs fit "squarely within the prospective-compliance exception reaffirmed by *Edelman*", "notwithstanding a direct and substantial impact on the state treasury". 433 U.S. at 289, 97 S.Ct. at 2762.

In the case at bar, the Commissioner's claim for relief against the Secretary differs from the impermissible relief sought in *Edelman v. Jordan,* because the Commissioner does not seek money from the federal treasury to satisfy a previously accrued liability. Rather, the Commissioner, as third-party plaintiff, seeks a declaration, and if necessary an injunction, that the Secretary's stepparent deeming regulation vio-

lates the federal statute or Constitution. Although such a declaration or injunction, if granted, would likely result in increased federal outlays to the state in the form of federal financial participation, such an ancillary effect is clearly contemplated and approved by the array of Eleventh Amendment cases cited above. *Accord, Silva v. Spirito,* 566 F.Supp. 228, 230 (D.Mass.1983) (Garrity, J.) (rejecting Secretary's sovereign immunity defense to Commissioner's third-party claim in suit involving the same state and federal stepparent deeming regulations as those at stake in the case at bar).

III. Exhaustion of Administrative Remedies

■ The Secretary contended at oral argument, although not in her brief, that the structure of the AFDC program does not anticipate involvement of the Secretary in AFDC claimants' challenges to eligibility determinations made by state officials. The Secretary argued further that the AFDC statutory scheme provides an administrative process (with subsequent judicial review) by which the Secretary determines whether to terminate or reduce a state's share of federal financial participation. Given the procedural posture of this case, we are not persuaded that judicial review of the federal regulation and statute would be best postponed.

Courts dispense with the general doctrine of exhaustion of administrative remedies where adherence to it would be futile. *See Weinberger v. Salfi,* 422 U.S. 749, 765–66, 95 S.Ct. 2457, 2466–67, 45 L.Ed.2d 522 (1975); *New Jersey v. Department of HHS,* 670 F.2d at 1277–78 (citing cases); *Women's Health Services, Inc. v. Maher,* 514 F.Supp. 265, 275–76 (D.Conn.1981) (third-party challenge by state against federal Medicaid regulation). We find that the goals underlying the exhaustion requirement would not be furthered by its application in this case.

Further development of facts would not focus the issues for the court. The factual record is rather simple and already fully developed. *Compare Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct.

1507, 1515–16, 18 L.Ed.2d 681 (1967) (question of agency authority to promulgate challenged regulation constituted purely legal question, making judicial review proper) with *Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 163–64, 87 S.Ct. 1520, 1524–25, 18 L.Ed.2d 697 (1967) (judicial review not appropriate where fuller development of factual record would sharpen the issues for the court).

Nor could a series of administrative hearings and appeals within the Department of Health and Human Services reverse the actions that the third-party complaint opposes.[5] HHS officers would be bound by a federal statute and its implementing regulation to cut off federal financial participation at least to the extent of state payments made in disregard of the federal stepparent deeming regulation. The administrative process simply could not provide the Commissioner with the relief that his third-party complaint seeks—invalidation of the federal regulation.

*Women's Health Services, Inc. v. Maher* presented a closely analogous situation. Plaintiffs brought suit against state officials to enjoin enforcement of a state regulation that allowed Medicaid reimbursement for only those abortion services necessary to save the mother's life. Federal law did not provide Medicaid reimbursement to states that decided to fund therapeutic, non-life

threatening abortions. The state defendants filed a third-party complaint against the Secretary of HEW and the Department of HEW, seeking reimbursement for any expenditures ordered by the court. The third-party defendants filed a motion to dismiss, in part for failure of the third-party plaintiff to exhaust administrative remedies. The court rejected this argument, pointing out that exhaustion "would be obviously futile" where "[f]ederal law prohibits the expenditure the State of Connecticut is seeking." 514 F.Supp. at 275.

Not only would requiring exhaustion in this case fail to serve the purpose of the exhaustion doctrine, it would delay adjudication of the parties' conflicting positions and would potentially subject the Commissioner to the incompatible commands of the state court and the federal government. Under the premise of the third-party complaint, the state court would prohibit the Commissioner from attributing stepparent income in calculating AFDC eligibility, and the Secretary would continue to require such attribution as a necessary condition for federal financial participation. The Commissioner could ultimately obtain federal judicial review of the denial of federal funds, but a judicial rejection of the Commissioner's attack on the federal regulation would leave the Commissioner in a permanent bind.[6]

---

**5.** Following the court-ordered elimination of the state stepparent deeming regulation, the Massachusetts AFDC plan would no longer conform to federal requirements. The Secretary could proceed in a number of ways: (1) If Massachusetts presented an amended state plan to the Secretary for approval, 42 U.S.C. § 1316(b), the Secretary could not approve it. 42 U.S.C. § 1316(a)(1); 45 C.F.R. § 201.3 (1982). The state could seek reconsideration in a plan-conformity hearing, 42 U.S.C. § 1316(a)(2); 45 C.F.R. § 201.4 (1982), subject to review in the federal court of appeals. 42 U.S.C. § 1316(a)(3); 45 C.F.R. § 201.7 (1982).

(2) Following the change in the Massachusetts plan, the Secretary could find, following reasonable notice and a hearing, that "there is a failure to comply substantially" with the stepparent deeming provision, 42 U.S.C. § 602(a)(31), thus enabling total or partial termination of federal funds. 42 U.S.C. § 604(a)(2); 45 C.F.R. § 201.6 (1982). Compliance hearings are reviewable in the federal

court of appeals. 42 U.S.C. § 1316(a)(3); 45 C.F.R. § 201.7 (1982).

(3) The Secretary could reduce funding to the state if its level of erroneous excess payments exceeded statutory tolerance limits. 42 U.S.C. § 603(i); 45 C.F.R. § 205.40–205.42 (1982). The state could seek reconsideration by appeal to the Grant Appeals Board. 42 U.S.C. § 1316(d); 45 C.F.R. § 205.42(h). The Board's decision is probably reviewable in federal district court. *See Massachusetts v. Departmental Grant Appeals Board,* 698 F.2d 22, 26 (1st Cir.1983).

**6.** If the Supreme Court of Massachusetts eventually affirmed the state trial court's holding, the Commissioner could not depend on review in the United States Supreme Court to avert inconsistent judgments as to the validity of stepparent deeming. The Commissioner would *not* have an appeal of right to the Supreme Court if the state court invalidated the state regulation on federal constitutional or statutory

We do not share the Secretary's fear that she could be forced to join every case in which claimants sue state public assistance officials. In a case such as this one in which the state eligibility regulation mirrors a federal regulation and statute, claimants could have sued the Secretary, either in addition to or instead of the Commissioner, for injunctive relief in federal court. The Administrative Procedure Act, 5 U.S.C. § 702 (as amended by Pub.L. No. 94–574 (1976)), contains an express waiver of sovereign immunity in such a suit.[7] It should not matter to a federal officer defending a federal regulation and statute whether she is brought into federal court by a claimant suing within the immunity waiver provision of 5 U.S.C. § 702 or by a state defendant who files a third-party complaint against the Secretary. We note that many, if not most, beneficiary suits are brought in federal court. *See, e.g., Califano v. Westcott,* 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979) (AFDC recipients brought suit for declaratory and injunctive relief in federal court against Massachusetts Commissioner of Public Welfare and Secretary of HEW); *see also* F. Block, *Cooperative Federalism and the Role of Litigation in the Development of Federal AFDC Eligibility Policy,* 1979 Wisc.L.Rev. 1, 10 n. 41 (most significant AFDC litigation has been commenced in federal court). If, under the circumstances of a specific case, a district court believed that joinder as a third-party defendant would unduly prejudice the Secretary, the court could exercise its discretion under Fed.R.Civ.P. 14 to dismiss the third-party complaint. *See Olympic Corp. v. Societe Generale,* 462 F.2d 376, 379 (2d Cir. 1972) ("impleader practice is discretionary with the courts and care must be taken to

avoid prejudice to the ... third-party defendant"); *see also Angel v. Seattle First-National Bank,* 653 F.2d 1293, 1300 (9th Cir.1981) (U.S. government failed to show it was prejudiced as third-party defendant).

Our decision to reverse the district court's dismissal of the Secretary as third-party defendant finds support in substantial policy considerations. The "scheme of cooperative federalism", *King v. Smith,* 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968), contemplated by the AFDC program is ill-served when, following specific congressional changes in AFDC eligibility rules, the Secretary of HHS seeks to avoid sharing with the states both the burden of defending beneficiary suits and the financial consequences of an adverse judgment. What the Supreme Court stated in reference to the Medicaid program in *Harris v. McRae,* 448 U.S. 297, 309, 100 S.Ct. 2671, 2684, 65 L.Ed.2d 784 (1980), is equally applicable to the AFDC program: "[It] was designed as a cooperative program of shared financial responsibility, not as a device for the Federal Government to compel a State to provide services [or benefits] that Congress itself is unwilling to fund." *Accord, Preterm, Inc. v. Dukakis,* 591 F.2d 121, 132 (1st Cir.), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1979).

Reversing the dismissal of the Secretary and returning the suit to the federal district court to which the Secretary had removed the suit allow the adjudication of the interests of all parties—claimants, Commissioner, and Secretary—in one proceeding. This will serve the interests of judicial efficiency. In addition, the federal court system has presumably developed some relevant

---

grounds. 28 U.S.C. § 1257(2) provides an appeal of right where a state court has *upheld* a state statute against federal constitutional or statutory attack. *See Huffman v. Pursue, Ltd.,* 420 U.S. 592, 605, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975). If the state court invalidates the state regulation, the Commissioner would have to seek a writ of certiorari under 28 U.S.C. § 1257(3).

**7.** The express waiver of sovereign immunity found in 5 U.S.C. § 702 does not apply to the case at bar, because claimants originally

brought suit in state court. The waiver provision of § 702 is expressly limited to actions brought "in a court of the United States...." *See Aminoil U.S.A., Inc. v. California State Water Resources Control Board,* 674 F.2d 1227, 1233 (9th Cir.1982) (citing legislative history of 1976 amendment to § 702). A federal court does not have jurisdiction over a removed suit if the state court lacked jurisdiction. *Arizona v. Manypenny,* 451 U.S. 232, 242 n. 17, 101 S.Ct. 1657, 1665 n. 17, 68 L.Ed.2d 58 (1981).

expertise, not from any inherent capacity but from recurring exposure to beneficiary suits within the labyrinthian AFDC statutory and regulatory scheme. *See Rosado v. Wyman*, 397 U.S. 397, 426, 90 S.Ct. 1207, 1225, 25 L.Ed.2d 442 (1970) (Douglas, J., concurring); Note, *Injunctive Relief from State Violations of Federal Funding Conditions*, 82 Colum.L.Rev. 1236, 1253 & n. 98 (1982).

For the foregoing reasons, the orders of the District Court are vacated and the causes are remanded to that Court for further proceedings.