**Sharon SLAUGHTER, Helen Stewart and Kathryn Jenkins, Plaintiffs,**

v.

**Leonard LEVINE, in his capacity as Commissioner of the Minnesota Department of Public Welfare, Defendant and Third Party Plaintiff,**

v.

**Margaret HECKLER, in her capacity as Secretary, United States Department of Health and Human Services, Third Party Defendant.**

Civ. No. 4–83–579.

United States District Court,
D. Minnesota,
Fourth Division.

April 2, 1985.

Mary Grau, Legal Aid Society of Minneapolis, Inc., Minneapolis, Minn., for plaintiffs.

Hubert H. Humphrey, III, Atty. Gen., State of Minn., and Vicki Sleeper, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendant and third party plaintiff.

James M. Rosenbaum, U.S. Atty., and Mary L. Egan, Asst. U.S. Atty., Minneapolis, Minn., Donna Morros Weinstein, Regional Atty., Dept. of Health and Human Services, Chicago, Ill., and Lewis K. Wise, Wendy Kloner, Civ. Div., Dept. of Justice, Washington, D.C., for third party defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant's motion pursuant to Federal Rules of Civil Procedure 59(a) and 60(b) to reconsider the Court's Memorandum and Order of December 10, 1984.

### FACTS

Plaintiffs in the instant action are recipients of Aid to Families with Dependent Children (AFDC) benefits who live in Minnesota. Plaintiffs brought this action on behalf of themselves and others similarly situated challenging the defendant Minnesota Department of Public Welfare's (DPW) policy regarding the receipt of lump sum income by AFDC recipients. Defendant's policy requires AFDC recipients who receive lump sum income to budget the sum for a predetermined number of months, during which time the recipient is ineligible for benefits.[1] In a Memorandum and Order dated December 10, 1984, the

---

1. A more complete description of defendant's policy and of the factual background of this case can be found in the Court's Memorandum and Order of December 10, 1984. 598 F.Supp. 1035 (1984).

Court certified a class of plaintiffs[2] and ruled on cross motions for summary judgment which had been brought by the parties. The Court rejected plaintiffs' argument that defendant's lump sum policy violated the Social Security Act, 42 U.S.C. § 602(a)(7), or the due process or equal protection clauses of the Constitution. The Court did, however, hold that the failure to provide adequate written notice to plaintiffs of the lump sum policy constituted a violation of the federal notice regulation, 45 C.F.R. § 206.10(a)(2)(i). In order to remedy this violation, the Court ordered the defendant to prepare a written notice explaining the lump sum policy, and to send this notice to all current AFDC recipients and all applicants for AFDC benefits. Finally, the Court held that the defendant must give those members of the class whose benefits were terminated in violation of the regulation an opportunity to apply for corrective payments.

Defendant now moves the Court to reconsider its Memorandum and Order of December 10, 1984, pursuant to Fed.R.Civ.P. 59(a) and 60(b). Defendant raises a number of arguments in this motion. First, defendant contends that named plaintiff Kathryn Jenkins does not have standing to raise the notice issue. Second, defendant argues that oral notice of the lump sum rule, supplemented by written notice, would be preferable to the written notice ordered by the Court. In the alternative, defendant requests that the Court approve the proposed written notice which it has submitted to the Court. Third, defendant argues that the "notice relief" ordered by the Court, which would give class members the opportunity to apply to the defendant for corrective payments, violates the eleventh amendment. Finally, the defendant requests that the Court order the third

party defendant Margaret Heckler, Secretary of the United States Department of Health and Human Services, to pay federal financial participation for any AFDC benefits paid to class members in accordance with the Court's December 10, 1984 Order.

## DISCUSSION

### A. Standing of named plaintiff Kathryn Jenkins

The Court allowed named plaintiff Kathryn Jenkins to intervene in this litigation on September 21, 1984, at the hearing on the parties' cross motions for summary judgment, pursuant to Fed.R.Civ.P. 24(b). Counsel for plaintiffs conceded at this hearing that the remaining named plaintiff, Helen Stewart, did not have standing to raise the regulatory and constitutional notice claims,[3] and indicated that plaintiff Jenkins' intervention was designed to preserve those claims. The defendant requested an opportunity to conduct limited discovery regarding plaintiff Jenkins. The Court ordered that defendant could conduct discovery regarding Jenkins until November 15, 1984. Subsequent to the hearing, defendant served interrogatories on both Jenkins and the third party defendant. The defendant also reviewed Jenkins' welfare files, which were in the custody of Hennepin County. It is on the basis of this discovery that defendant argues that plaintiff Jenkins does not have standing to raise the notice claims on behalf of the class.

Plaintiff Jenkins applied and was found eligible for AFDC benefits in Hennepin County in November of 1982. Plaintiff's husband, who was disabled as a result of a job-related accident, had workers' compensation and social security disability claims pending at the time of the AFDC application. Plaintiff has stated in an affidavit

---

**2.** The class was defined as follows:

those individuals in the state of Minnesota who are otherwise eligible for AFDC benefits and who have been, or will be, found ineligible for AFDC benefits for a predetermined number of months as a consequence of receipt of lump sum income by one of the members of an AFDC assistance unit of which they have been a member, and whose lump

sum has or will become unavailable to them in whole or in part prior to their re-eligibility for benefits.

**3.** Plaintiff Stewart did not have standing to raise the notice claims on behalf of the class because she did not expend any of her lump sum funds prior to receiving notice of the defendant's policy.

that she advised the AFDC caseworker of these pending claims, but that she was not informed of the lump sum formula used by defendant. Plaintiff's husband received a lump sum of $5,752 on October 31, 1983. According to plaintiff's affidavit, she never received notice of the lump sum rule prior to this date. Plaintiff reported the receipt of her lump sum to Hennepin County welfare authorities on November 2, 1983; by that time, plaintiff's family had spent the entire sum on, among other things, overdue mortgage payments and car repair bills. In her affidavit, plaintiff stated that it was during a conversation with her caseworker on November 2, 1983 that she was first advised of her budgeting responsibilities under the lump sum rule.

Defendant claims that evidence obtained during discovery establishes that plaintiff Jenkins did receive notice of the lump sum rule prior to the time she received and spent the lump sum in October and November of 1983. Plaintiff was an AFDC recipient in September of 1981, when the defendant sent a letter dated September 18 to all recipients which included the following information about the lump sum rule[4]:

> **Lump Sum Money:** When a family receives lump sum money such as an inheritance, a Social Security back payment, insurance settlement, gift, etc., the money will be deducted from the AFDC grant, whether or not it has already been spent. If the lump-sum added to other family income totals more than the AFDC maximum for that size family, the family will be ineligible for the month in which the lump sum was received (and possibly for a number of following months), whether or not the money is spent before the period of ineligibility has gone by. If the family already received an AFDC grant that month, the grant would be "recouped" by the welfare agency.

Defendant contends that plaintiff Jenkins lacks standing to raise the notice claims on behalf of the class because she received

this letter. Plaintiff has submitted an affidavit in which she states that she does not remember receiving this letter.

■ The Court finds that plaintiff Jenkins has standing to raise the notice claims on behalf of the class, notwithstanding the fact that she may have received the September 18, 1981 letter. The Court's decision rests on two grounds. First, the description of the defendant's lump sum policy which was contained in the September 18 letter was simply inadequate. As the Court noted in its initial Memorandum and Order, "[t]his letter merely told recipients that receipt of a lump sum may 'possibly' affect their eligibility, without detailing the lump sum formula or its inflexible application...." Memorandum and Order of December 10, 1984 at 34–35; 598 F.Supp. at 1050. The defendant's letter contained neither a coherent explanation of the lump sum formula nor examples of its application. The Court finds that the letter's description of the lump sum policy is both incomplete and confusing. The fact that plaintiff Jenkins received this letter therefore does not mean that she lacks standing to raise the class notice claims.

■ The second ground for the Court's determination that plaintiff Jenkins has standing is that Jenkins received a lump sum subsequent to the September 18, 1981 letter which was not treated by defendant in a manner consistent with the explanation in the letter. Defendant stated in the letter that the new lump sum policy, along with a number of other changes in AFDC policy, would take effect on October 1, 1981. As a result of litigation, however, the defendant was enjoined from implementing the new lump sum policy until February of 1982. *Minnesota Recipients Alliance v. Noot,* 527 F.Supp. 140 (D.Minn. 1981). Individuals who received lump sum income during the period between October of 1981 and February of 1982 were evaluated under the old policy, despite what the September, 1981 letter indicated. Therefore, the lump sum was treated as income

---

**4.** The September 18 letter contained information on a number of other significant changes in AFDC rules resulting from the Omnibus Budget Reconciliation Act of 1981.

in the month received and as a resource thereafter. Plaintiff Jenkins' husband received a partial workers' compensation settlement in December, 1981 and January, 1982 that was treated in this manner. Defendant did not calculate a period of ineligibility for plaintiff as a result of this lump sum. Rather, when plaintiff reapplied for benefits in November of 1982 after her family had exhausted the lump sum, she was found eligible after providing receipts which demonstrated how the lump sum had been spent.

Plaintiff Jenkins, like other individuals who received lump sum income during the period from October, 1981 to February, 1982, could only assume that the original policy regarding lump sums was still in effect, in light of the fact that her husband's workers' compensation settlement was treated in accordance with the original policy. Even if the explanation of the new lump sum rule contained in the September, 1981 letter had been completely adequate, then, the notice would have still been ineffective because the rule was not implemented in accordance with the letter. The Court notes that defendant did not send any follow up notice to AFDC recipients explaining that the effective date of the new lump sum policy had been changed. Moreover, the defendant did not send any notice to recipients subsequent to the September, 1981 letter in an attempt to explain the lump sum rule. Defendant's claim that plaintiff Jenkins received effective notice of the new policy, and that she therefore lacks standing to raise the notice claims on behalf of the class, accordingly must be rejected.

**B.  The notice requirement**

Defendant moves the Court to reconsider its holding that defendant must provide all AFDC recipients and applicants with a written notice which explains the lump sum rule. Defendant contends that face-to-face communication is the most effective manner in which to inform AFDC recipients of

technical program requirements, and that it should therefore only be required to provide advance oral notice of the lump sum rule (supplemented with written notice) to those recipients who either report the likelihood of a lump sum receipt or whose circumstances indicate such a likelihood.[5] The Court will not alter the notice requirements set forth in its original Order.

There are a number of shortcomings with the defendant's proposed alteration of the Court's notice requirement. First, the federal notice regulation provides for oral explanations of AFDC policy as a supplement to written material, rather than vice versa, as the defendant proposes. 45 C.F.R. § 206.10(a)(2)(i) ("individuals are given information in written form, and orally as appropriate, about coverage, conditions of eligibility, scope of the program, and related services available....") The Court notes that oral notice would be very hard to prove or disprove. Second, the notice regulation requires that information about the eligibility conditions for the AFDC program be provided uniformly to all applicants and recipients, rather than to selected individuals whom caseworkers determine are in need of the information. *Id.* Third, the defendant's proposal to give notice of the lump sum rule only to those individuals who anticipate the receipt of a lump sum, or whose circumstances indicate that receipt of a lump sum is imminent, rests too heavily on the exercise of discretion of the individual caseworker. Even the most competent caseworker may on occasion forget to provide the required notice, or provide it in an untimely fashion. The defendant's proposal simply leaves too much room for error to constitute effective notice. Finally, as plaintiffs point out, AFDC recipients cannot always anticipate the receipt of a lump sum. Under the defendant's proposed notice scheme, a recipient who receives a lump sum with no advance warning would have no notice of the budgeting requirements of the lump sum rule. Such an individual might well not learn of the

---

**5.**  Defendant does not object to the notice required by the Court on the grounds that it

would pose administrative inconvenience or expense.

strict requirements of the lump sum rule until after he or she spends all or a portion of the lump sum. For the above reasons, the Court believes that the advance written notice of the lump sum rule required by its December 10, 1984 Order is the best way to ensure that all AFDC recipients and applicants are aware of their responsibilities under this critically important rule. The defendant should not hesitate, of course, to provide oral notice to those individuals who have received or will receive a lump sum.

■ Defendant has requested in the alternative that the Court approve the proposed written notice that it has provided to the Court. The first proposal which defendant submitted to the Court was an eight page document containing a wide range of information on a number of AFDC requirements, as well as information on other public assistance programs; the description of the lump sum rule was found on the third page of this document and was not highlighted in any way. Plaintiffs objected to this notice on the ground that the information on the lump sum rule should be contained in a separate notice, and provided the Court with a proposed one page notice that clearly explains the particulars of the lump sum budgeting rule. Defendant has responded to this notice with a second proposal. This proposed notice is a single sheet with printing on both sides, entitled "IMPORTANT NOTICE ABOUT WHAT YOU SHOULD DO WHEN YOU HAVE INCOME, OR THINK YOU MIGHT RECEIVE INCOME IN THE FUTURE." The front of the sheet contains general information on AFDC recipients' rights and responsibilities regarding income reporting. The reverse side of the sheet contains a description of the lump sum rule which incorporates the plaintiffs' proposed language almost verbatim.

With some very minor modifications, the Court will approve the defendant's proposed notice. A copy of this notice is appended to this Order as Appendix A. The notice contains a clear exposition of the lump sum rule and is not unduly lengthy. Plaintiffs continue to object to the notice

on the ground that the information explaining the lump sum rule seems to get "lost" in the text. The Court believes that the defendant's proposal sufficiently draws the readers' attention to the lump sum information. Moreover, the defendant is entitled to a fair amount of deference when it comes to the question of notifying AFDC recipients about their rights and responsibilities under the program. While the Court has found that the federal regulations require defendant to provide advance written notice of the lump sum rule, the Court recognizes that the defendant possesses considerable expertise regarding administration of the AFDC program. The Court will therefore decline to dictate the precise parameters of the lump sum notice. The notice provided by the defendants, as modified by the Court, clearly satisfies the requirements of 45 C.F.R. § 206.10(a)(2)(i).

## C. Defendant's eleventh amendment objections to "notice relief"

■ The Court's Order of December 10, 1984 did not order the defendant to pay retroactive AFDC benefits to any class members. Under the Supreme Court's decision in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed. 662 (1974), such an order is clearly barred by the eleventh amendment. The relief which the Court ordered in its December 10 decision was rather the "notice relief" sanctioned by the Supreme Court in *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); the defendant was simply ordered to notify class members that they may apply to the defendant for corrective payments. Defendant argues that this remedial order violates the eleventh amendment. The Court cannot agree. First, as the Supreme Court recognized in *Quern,* this type of order does not by itself trigger the state's administrative machinery; the decision whether to pursue corrective payments rests with each class member. Second, the decision whether to grant corrective payments rests entirely with the State, and not the federal court. It is clear that not all class members would be eligible for corrective payments under the Court's or-

der. Third, the defendant has made no issue of the administrative expense associated with the preparation and mailing of the notice. The absence of administrative expense was a factor in the *Quern* decision. 440 U.S. at 335 n. 3, 347 & n. 19, 349, 99 S.Ct. at 1142 n. 3, 1148 & n. 19, 1149.[6] Finally, the retroactive relief contemplated by the Court's order is incidental to a grant of prospective relief—the requirement that advance written notice be given. For the above reasons, the Court declines to alter the "notice relief" required by its December 10 Order. Accordingly, the defendant should prepare a notice to the members of the class regarding the opportunity to apply for corrective payments. A copy of such notice should be provided to counsel for the plaintiffs, and the notice should then be distributed to the class.

## D. Federal financial participation

The AFDC program is designed as a "scheme of cooperative federalism" that is funded jointly by the federal government and participating states. *King v. Smith,* 392 U.S. 309, 316, 88 S.Ct. 2128, 2132, 20 L.Ed.2d 1118 (1968). In accordance with this scheme, the AFDC funding statute establishes a cost-sharing formula which allocates AFDC program costs between federal and state governments. 42 U.S.C. § 603. The payments made by the federal government toward legitimate AFDC program expenditures are referred to as "federal financial participation" (FFP). The state defendant in the instant action requests that the Court order the federal third party defendant to pay FFP for any benefits paid to class members in accordance with the Court's Order. The Court will grant defendant's request and order the third party defendant to pay FFP.

The Secretary of Health and Human Services' regulations provide that FFP is available for "[p]ayments of assistance within the scope of Federally aided public assistance programs made in accordance with a court order." 45 C.F.R. § 205.-10(b)(3). The plain language of this regulation clearly requires the payment of FFP in the instant case.[7] The federal third party defendant has taken the position in this and other litigation that it has the discretion to decide whether it will pay FFP for court-ordered benefits. *Chu Drua Cha v. Noot,* 696 F.2d 594 (D.Minn.1982). The regulation in question admits of no such discretion, and has been interpreted to require FFP payments for benefits given by the state even when the federal defendant considers the benefits to be improper. *State of Georgia v. Heckler,* 583 F.Supp. 1377, 1380–81 (N.D.Ga.1984) (state payment of Medicaid benefits pursuant to temporary federal court injunction a legitimate state expenditure requiring FFP). The United States Court of Appeals for the First Circuit has observed that the cooperative federalism structure of the AFDC program is ill-served when "the Secretary of HHS seeks to avoid sharing with the states both the burden of defending beneficiary suits and the financial consequences of an adverse judgment." *Kozera v. Spirito,* 723 F.2d 1003, 1011 (1st Cir.1983). In the instant case, the state defendant is entitled to assurance that the federal third party defendant will participate in any corrective payments made pursuant to the Court's Order. *Cf. Brogan v. Miller,* 101 F.R.D. 729 (N.D.Ill.1984) (state defendant's third party complaint against federal agency dismissed where agency declared that court's orders were consistent with federal regulations and promised not to terminate FFP).

The defendant has a legitimate basis for feeling insecure about the payment of FFP in this case. The federal third party defendant has given no assurances that it will pay FFP, and it has taken several positions

---

**6.** The instant case is therefore distinguishable from *Colbeth v. Wilson,* 554 F.Supp. 539, 546 (D.Vt.1982), *aff'd,* 707 F.2d 57 (2d Cir.1983), a case cited by the defendant.

**7.** The Court stresses that while any corrective payments would be in accordance with the Court's December 10, 1984 Order, and thus within the scope of 45 C.F.R. § 205.10(b)(3), it has *not* ordered the state to make retroactive benefit payments.

in this and similar litigation which indicate that it may not consider itself bound to pay FFP. Third party defendant has taken the position that prior written notice of the lump sum rule is not required by 45 C.F.R. § 206.10(a)(2)(i), and that its interests are not "implicated" by the adequacy of the notice claims asserted by the plaintiffs. In previous litigation, *Chu Drua Cha v. Noot*, the third party defendant has claimed that it has the authority to decline to pay FFP if court ordered benefits are attributable to the state's administration of the AFDC program, a claim which it could conceivably raise in the instant case. This latter argument has been rejected by several courts in analogous situations. *See, e.g., Bermudez v. United States Department of Agriculture*, 490 F.2d 718 (D.C.Cir.), *cert. denied*, 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973) (federal government financially responsible for restored benefits to food stamp recipients injured by state administrative errors); *Carter v. Butz*, 479 F.2d 1084, 1087 (3d Cir.), *cert. denied*, 414 U.S. 1094, 94 S.Ct. 727, 38 L.Ed.2d 552 (1973) (federal agency financially liable for restored benefits to recipients injured by state's error in delivery of food stamp cards). In short, defendant faces considerable uncertainty on the question of FFP. In view of the fact that defendant is clearly entitled to FFP, the Court will order the third party defendant to contribute its share of any corrective payments made to the class.

■■■■ The third party defendant argues that the question of FFP is a matter which is not yet ripe for judicial review because the defendant has not exhausted the administrative procedures for the consideration of FFP claims set forth in 42 U.S.C. § 1316(d) and 45 C.F.R. Part 16, Appendix A, § B(a)(1). Defendant's response to this argument is that exhaustion of administrative remedies is inappropriate in the instant case. Defendant contends that exhaustion would be futile and would protract the litigation. The Court agrees. The requirement that administrative remedies be exhausted can be judicially waived where exhaustion would be futile or where

the goals underlying the doctrine would not be furthered by its application. *See Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975); *Kozera v. Spirito*, 723 F.2d 1003, 1010 (1st Cir. 1983); *State of New Jersey v. Department of Health and Human Services*, 670 F.2d 1262, 1277-78 (3d Cir.1981); *Montgomery v. Rumsfeld*, 572 F.2d 250, 253 (9th Cir. 1978). The Supreme Court in *Weinberger* noted that

> [e]xhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

422 U.S. at 765, 95 S.Ct. at 2466. A decision by the Court at this time that the third party defendant must pay FFP will not interfere with any of the above purposes of the exhaustion doctrine.

The FFP issue in this case is a legal question rather than a factual question. There is therefore no special need for agency expertise or for the development of a factual record sufficient for judicial review. Moreover, the legal question in this case is a straightforward one which is answered by the third party defendant's own regulations, 45 C.F.R. § 205.10(b)(3), so that judicial resolution of the issue at this time would not undercut any legitimate exercise of agency discretion. An administrative forum is simply not appropriate for a determination of whether the federal government should be required to reimburse the state for AFDC payments not required by a state plan but made in accordance with a court order. *See Women's Health Services, Inc. v. Maher*, 514 F.Supp. 265, 276 (D.Conn.1981). The Court can see no reason to defer consideration of the FFP issue, especially given the fact that the state defendant is entitled to a clear picture of what responsibility it will bear for any corrective payments made in the case.

## CONCLUSION

Based on the foregoing, **IT IS ORDERED** that:

1. the third party defendant is directed to pay federal financial participation (FFP) for any corrective payments made to class members in accordance with the Court's Order of December 10, 1984;

2. defendant's motion for reconsideration pursuant to Federal Rules of Civil Procedure 59(a) and 60(b) is in all other respects denied;

3. the notice attached to the Court's Order as Appendix A satisfies the requirements of 45 C.F.R. § 206.10(a)(2)(i), and should be distributed to AFDC recipients and applicants forthwith in the manner set forth in the Court's Order of December 10, 1984.

## APPENDIX A

[information to be contained on front of notice form]

**IMPORTANT NOTICE ABOUT WHAT YOU SHOULD DO WHEN YOU HAVE INCOME, OR THINK YOU MIGHT RECEIVE INCOME IN THE FUTURE**

This sheet explains what you, as an AFDC recipient, should do when you receive income. This applies to income from earnings *and* income from other sources or people, including gifts, inheritances, government programs like veteran's benefits, workers' compensation, Social Security, and all other ways in which you might receive checks or cash.

It is *very important* that you read this sheet, *both the front and the back.* INFORMATION ABOUT LUMP SUM INCOME IS INCLUDED. It will give you some valuable help in knowing what you are supposed to do when you find out that you will be receiving a new kind of income that the welfare office doesn't know about yet. If you don't read it and then you find out what the rules are too late, you will risk:

. getting unnecessary reductions in your future AFDC grants because of overpayments that could have been avoided.

. losing a choice that you might have to have the income treated in a way that's better for you and your family.

. being penalized for not reporting, or for reporting late.

. being charged with fraud and, if convicted, suffering severe penalties.

## TYPE OF INCOME

The two types of income are "earned" and "unearned" income.

"Earned" income is what you receive from working. When you have earned income, you are allowed to have some of it not deducted from your AFDC grant to cover work expenses and costs you have for day care, and, for a limited number of months, an extra amount to provide you with a work incentive bonus.

"Unearned" income generally means all other kinds of payments or money you receive that does not come from working. Some kinds of unearned income aren't counted by AFDC, but most are. Some kinds of unearned income can come regularly (like every month), or occasionally, or just once. Usually, it is hardest to remember to report unearned income, and hardest to know ahead of time how each kind of unearned income will be handled in AFDC.

## HOW TO REPORT "EARNED" INCOME

Earned income is the easiest to report. You always list it on your Household Report form that we send to you, usually each month. If you get a new job, lose a job, or have a change in your hours or hourly pay rate, you should let your financial worker know that is happening by calling or visiting the welfare office. If you think it *might happen,* you can call your worker to find out how that would affect your grant.

## HOW TO REPORT "UNEARNED" INCOME

There are some kinds of unearned income that you should tell your worker about

*before* you receive it. For example, if you are getting a loan, your worker can tell you what will be needed by AFDC so that the loan will not get counted against your grant. Another important example is with "lump sum" income—a kind of income that is usually a fairly large amount and that you will not be receiving regularly. In the case of lump sums, you have some *very important* choices that you can make that will benefit you and your family, but these must be made *before* you actually receive the payment. READ THE LAST SEC-TION ON LUMP SUMS CAREFULLY FOR MORE INFORMATION.

--------------------

[information to be included on back of no-tice form]

Once you receive any unearned income, you must always report it on your Household Report form. Any time you want to know how a certain kind of unearned income will affect your AFDC grant, call or visit your financial worker.

## YOUR RIGHT TO AN EXPLANATION OF THE AFDC PROGRAM'S RULES ABOUT INCOME

You have the right to know and understand the AFDC program's rules about income, whether you have already received the in-come or not. Your financial worker is re-quired to tell you about policies in the program that could affect you, and what choices you have under the program that will be of benefit to you and your family or that will result in getting a higher grant. However, there are so many rules in AFDC that cover every possible situation that your financial worker can't possibly tell you all of them in advance. IT IS YOUR RESPONSIBILITY TO KEEP YOUR FI-NANCIAL WORKER INFORMED ABOUT YOUR SITUATION—especially any income you might expect to start re-ceiving—SO THAT YOUR FINANCIAL WORKER CAN TELL YOU WHAT YOU CAN DO TO GET THE MOST BENEFIT FROM THE AFDC PROGRAM. The last section on this sheet gives an example of one situation in which it is *very important*

for you to find out the program's rules *before* you actually receive your income. This is especially important because the AFDC rules do change a lot, and the old rules that you know about may now be different.

## LUMP SUM INCOME

Lump sum income is any cash payment that you do not receive every month, like workers' compensation settlements, person-al injury settlements, back payments of Social Security disability benefits, inheri-tances, and so forth. If you or anybody in your family gets a lump sum while on AFDC, the county will apply the LUMP SUM RULE to your case.

Under the LUMP SUM RULE, you will be expected to save the money and live on it instead of receiving an AFDC grant for a period of months. This is called a PERIOD OF INELIGIBILITY. AFDC will use a formula to determine how long you will be expected to live on the lump sum money. The length of time you will be ineligible for AFDC will vary depending on the size of the lump sum.

Here is how the lump sum rule works. Assume that you have one child and no other income besides AFDC of $431 per month. If you get an inheritance of $4,310, AFDC will divide the amount of the lump sum—$4,310—by the amount of your monthly grant—$431—to produce a period of 10 months during which you and your entire family will be ineligible for AFDC. Your PERIOD OF INELIGIBILITY begins in the month in which you get the lump sum, and in this example would last for 10 months *regardless of what happens to the money in the meantime.* You will *not* be allowed to go back on AFDC until the period of ineligibility is over even if you have used up some of the lump sum money on expenses like back bills.

There are a few exceptions to the lump sum rule. That is why it is very important that you get in touch with your AFDC financial worker as soon as you think you may be receiving a lump sum. Your finan-

cial worker will be able to give you a more detailed explanation of how the lump sum rule applies to your individual case. If you don't know in advance that you will be getting a lump sum, you should contact your financial worker as soon as you receive the money. You should not spend any of the money until you talk to your financial worker.

If you receive lump sum income during a month when you are not on AFDC, then the lump sum rules does not apply. For example, if you stop receiving AFDC as of October 1st, and get a lump sum on October 6th, the lump sum rule isn't applicable. In that case, you could reapply for AFDC benefits as soon as the money was gone. REMEMBER, if you get a LUMP SUM while you are on AFDC, you'll be expected to live on the lump sum money until your PERIOD OF INELIGIBILITY has expired.

IF YOU HAVE ANY QUESTIONS, OR ARE NOT SURE ABOUT ANY OF THE RULES, CONTACT YOUR AFDC WORKER AND ASK.