Sharon **SLAUGHTER, Helen Stewart and Kathryn Jenkins, Plaintiffs,**

v.

Leonard **LEVINE, in his capacity as Commissioner of the Minnesota Department of Public Welfare, Defendant and Third Party Plaintiff,**

v.

Margaret **HECKLER, in her capacity as Secretary, United States Department of Health and Human Services, Third Party Defendant.**

**No. Civ. 4–83–579.**

United States District Court, D. Minnesota, Fourth Division.

Nov. 6, 1985.

**510**

Mary Grau, Legal Aid Society of Minneapolis, Inc., Minneapolis, Minn., for plaintiffs.

Hubert H. Humphrey, III, Atty. Gen., State of Minn., and Vicki Sleeper, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendant and third party plaintiff.

Francis X. Hermann, Acting U.S. Atty., and Mary L. Egan, Asst. U.S. Atty., Minneapolis, Minn., and Lewis K. Wise, Wendy Kloner, Civil Div., Dept. of Justice, Washington, D.C., for third party defendant.

### MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on plaintiffs' motion for contempt, or in the alternative for supplemental relief. Plaintiffs' motion for contempt will be denied. Plaintiffs' motion for supplemental relief will be denied in part and granted in part.

### FACTS

This case returns to the Court for the fourth time. Plaintiffs are a class of persons claiming deprivation of AFDC benefits due to defendant's failure to adhere to federal regulations in administering the "lump sum rule," 42 U.S.C. § 602(a)(17). The lump sum rule mandates that AFDC beneficiaries in receipt of lump sum income, defined as income from a non-recurring source,[1] be removed from AFDC rolls

---

1. *See* Minnesota Department of Public Welfare Instructional Bulletin, 82–3, Attachment 13. Included in defendant's definition of lump sums are gifts, inheritances, contributions, some insurance settlements, back pay, and profit shar-

ing. Excluded from the definition are settlements from the sale of a homestead, divorce settlements, retroactive AFDC payments, and insurance settlements to pay medical bills or replace property loss. *Id.*

for a period of months equal to the amount of the lump sum income divided by the standard of need applicable to the recipient. *Id.*

In *Slaughter v. Levine*, 598 F.Supp. 1035 (D.Minn.1984) (*Slaughter I*), the Court found that defendant had contravened federal regulations by failing to provide AFDC recipients with adequate notice of the lump sum rule and its effect on eligibility requirements. Specifically, the Court found that defendant had violated 45 C.F.R. § 206.10(a)(2)(i), which provides in relevant part that:

> Applicants shall be informed about the eligibility requirements and their rights and obligations under the program. Under this requirement individuals are given information in written form, and orally as appropriate, about coverage, conditions of eligibility, scope of the program, and related services available, and the rights and responsibilities of applicants for and recipients of assistance. Specifically developed bulletins or pamphlets explaining the rules regarding eligibility and appeals in simple, understandable terms are publicized and available in quantity.

45 C.F.R. § 206.10(a)(2)(i). Accordingly, the Court enjoined defendant to mail notices (publicity notices) to current AFDC recipients explaining the lump sum rule. The Court further enjoined defendant to include publicity notices in the information which it provides to individuals who apply for AFDC benefits, and in the materials given to recipients at the time of their periodic six-month reevaluation for benefits. In addition, the Court enjoined defendant to prepare a notice (*Quern* notice) for mailing to all class members whose benefits had been terminated due to receipt of a lump sum for the purpose of informing them that they had the right to apply to defendant for corrective payments. *Slaughter I*, 598 F.Supp. at 1055.

Defendant subsequently brought a motion for reconsideration with respect to both the publicity notice and the *Quern* notice to class members. In *Slaughter v. Levine*, 605 F.Supp. 1242 (D.Minn.1985) (*Slaughter II*), the Court approved defendant's draft publicity notice with certain minor modifications. The Court further ordered defendant to "prepare a notice to the members of the class regarding the opportunity to apply for corrective payments," *Slaughter II*, 605 F.Supp. at 1249, and to provide a copy of such notice to plaintiffs' counsel before distributing it to the class. *Id.*

Defendant then appealed to the United States Court of Appeals for the Eighth Circuit, at the same time moving for a stay of the judgment of this Court pending appeal. In an unpublished order dated June 13, 1985 (*Slaughter III*), the Court denied defendant's stay motion. Defendant subsequently prepared and mailed to county welfare offices the publicity notice approved by the Court in *Slaughter II*. Defendant also prepared a draft *Quern* notice, submitting it to plaintiffs' counsel on July 31, 1985.

Plaintiffs now move the Court for an order finding defendant in contempt. Plaintiffs raise objection to both the publicity notice and *Quern* notice prepared by defendant. Plaintiffs also seek a court order directing the defendant to eliminate the "overpayment" of class member Kathryn Jenkins on the ground that Jenkins was not adequately notified of the lump sum rule. Finally, plaintiffs seek a "declaration" of the Court that *Slaughter I* mandates that class members who spent their lump sum income prior to notification of the lump sum rule are entitled to corrective payments from the defendant.

## DISCUSSION

### Publicity Notice

In *Slaughter II*, 605 F.Supp. 1242, the Court approved a draft publicity notice prepared by defendant, with certain minor modifications. *See Slaughter II* Appendix A, 605 F.Supp. at 1251–53 (text of the approved notice). On July 5, 1985, defendant sent publicity notices to county welfare offices with instructions to distribute them to AFDC applicants and recipients at six-month intervals. The notices sent on that

date, however, were not identical to the notice approved by the Court in *Slaughter II*. Modification of the approved notice was made necessary, defendant contends, by certain amendments to Minnesota's AFDC program enacted by the Minnesota Legislature in the 1984–85 session.[2]

■ Plaintiffs do not dispute that the 1985 statutory amendments make necessary the addition of certain language to the publicity notice approved by the Court in *Slaughter II*. Nor do plaintiffs raise material dispute to the language drafted by defendant. Rather, plaintiffs object to the *placement* of the amendatory language. Plaintiffs argue that the additional information should be inserted in the fifth paragraph of the second page of the notice, rather than the third paragraph of the second page, as drafted by defendant. Plaintiffs contend that as drafted by defendant, the amendatory language may cause confusion, in that paragraphs three and five both make reference to certain exceptions to the lump sum rule, without any indication whether the exceptions referenced are identical or distinct.

Paragraph 5 of plaintiffs' proposed publicity notice provides (amendatory language underlined):

There are a few exceptions to the lump sum rule. *See below. That is why it is very important that you get in touch with your AFDC financial worker as soon as you think you may be receiving a lump sum. Your financial worker will be able to give you a more detailed explanation of how the lump sum rule applies to your individual case. If you don't know in advance that you will be getting a lump sum, you should contact your financial worker as soon as you receive the money. You should not spend any of the

money until you talk to your financial worker.

*INSERT—There are some types of lump sums that are not subject to the rule. And under certain circumstances the period of ineligibility may be shortened.

Paragraph 3 of the publicity notice prepared by defendant provides (amendatory language underlined):

Under the LUMP SUM RULE, you will be expected to save the money and live on it instead of receiving an AFDC grant for a period of months. This is called a PERIOD OF INELIGIBILITY. AFDC will use a formula to determine how long you will be expected to live on the lump sum money. The length of time you will be ineligible for AFDC will vary depending on the size of the lump sum. There are some types of lump sums that are not subject to the lump sum rule. Under certain circumstances the period of ineligibility may be shortened. Ask your financial worker for more information about this.

The Court has examined the changes made by defendant, and finds that they do not raise an undue likelihood of confusion. It is not the province of the federal courts to oversee the day-to-day operations of the Minnesota Department of Public Welfare. The actions taken by defendant are entitled to a fair amount of deference, *Slaughter II*, 605 F.Supp. at 1248, provided that they remain within the bounds set out by the Court's prior orders. Defendant's conduct here is of that character, and the modified notice drafted by defendant will be respected. Accordingly, the defendant may distribute those publicity notices already printed. Defendant is instructed to substitute plaintiffs' proposed draft, paragraphs 3–5, wherein the modifying language is placed in paragraph 5, rather than paragraph 3, in place of its own draft paragraphs 3–5 in all future publicity notices which defendant may print and distribute.

---

**2.** In general, the 1985 statutory amendments removed certain kinds of lump sum income from the operation of the lump sum rule, such as income from personal injury insurance settlements, 1985 Minn.Sess.Law.Serv. ch. 252, § 15 (West), and income spent on certain medical expenses. *Id.* The amendments also provide for recalculation of the length of the lump sum ineligibility period if the lump sum becomes unavailable or if the AFDC standard of need increases. *Id.*

The Court finds that some gains in clarity will be realized by the substitution of plaintiffs' proposed language in future notices. Defendant has indicated no objection to making this change.

**Overpayment to Kathryn Jenkins**

■ Kathryn Jenkins is a named plaintiff in this matter. Jenkins was found eligible for AFDC benefits in November, 1982. On October 31, 1983, plaintiff's husband received a disability payment in the amount of $5,752. On that date plaintiff's husband expended $3,863.75 of that amount to satisfy a mortgage arrearage, and $1,366 to satisfy an overdue car repair bill. The remaining $500–$600 was spent on other bills and on clothing for plaintiff's children.

Plaintiff reported receipt of the disability settlement to Hennepin County welfare officials on November 2, 1983. On that date defendant was informed for the first time of the lump sum rule. On November 3, 1983, Hennepin County advised plaintiff that her AFDC benefits would be terminated as of December 1, 1983 through May, 1984, that she would remain ineligible until May, 1984, and that her October and November, 1983 grants would be considered an overpayment.

From this decision of the Hennepin County welfare office plaintiff appealed. Plaintiff continued to receive AFDC payments during the pendency of the appeal. Defendant rejected plaintiff's appeal on August 9, 1984, notifying plaintiff on September 5, 1984 that she would be charged an overpayment of $5,464, representing AFDC benefits received by plaintiff in October and November, 1983 and during the pendency of her appeal. *Slaughter I,* 598 F.Supp. at 1040.

Plaintiffs now move the Court for an order requiring defendant to eliminate the $5,464 overpayment charged to Kathryn Jenkins. Plaintiffs argue that *Slaughter I–III* necessarily require such an outcome, inasmuch as Jenkins was a named plaintiff who expended lump sum income prior to receiving adequate notice of the lump sum rule.

*Slaughter I–III* did not in express terms require defendant to eliminate the Jenkins overpayment. In the *Slaughter* orders the Court left the decision whether to grant corrective payments entirely with the state.[3] *Slaughter II,* 605 F.Supp. at 1248. Further, an order requiring the state to eliminate overpayments goes beyond the "notice relief" sanctioned by the Supreme Court in *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). In that case the Supreme Court noted that a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the eleventh amendment. *Quern,* 440 U.S. at 337, 99 S.Ct. at 1143, *citing Edelman v. Jordan,* 415 U.S. [651] at 663, 94 S.Ct. 1347 at 1355, 39 L.Ed.2d 662 (1974). Should the Court order elimination of the Jenkins overpayment, the resulting "liability" would be paid from public funds, albeit indirectly. "Overpayments" are defined by the federal regulations as AFDC benefits to which the recipient is not entitled. In order to recoup overpayments, defendant reduces the monthly AFDC grant (once reinstituted) until the full amount has been recovered. 45 C.F.R. § 233.20(a)(13). Under Minnesota law, recoupments are made at the rate of one percent of the grantee's monthly benefits if the overpayment is owing to agency error, and at a five percent rate if owing to grantee error. Minn.Stat. § 256.73, subd. 6. Defendant has agreed to treat the Jenkins' overpayment as one owing to agency error.[4] Thus, were the

---

**3.** The Court notes in this regard that in a recent state administrative appeal decision a DHS referee found that the failure of Washington County welfare officials to adequately notify an AFDC recipient of the lump sum rule was grounds for reinstatement of the petitioner's AFDC benefits. *See* Washington Co. Appeals, Docket No. 11926 (7–31–85).

**4.** Recoupment may be made only to the extent that the reduced assistance payment, together with the grantee's liquid assets and total income after deducting actual work expenses equals at least 95 percent of the grantee's standard of need, 99 percent if the overpayment is due solely to agency error. Minn.Stat. § 256.73, subd. 6.

**514**

Court to grant the requested relief, the public fisc of the State of Minnesota would be reduced in the amount of one percent of plaintiff's monthly benefit. This, the Supreme Court has made clear, the Court may not do.[5] *See Edelman,* 415 U.S. at 663, 94 S.Ct. at 1355 ("suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); *Miener v. Missouri,* 673 F.2d 969, 982 (8th Cir.), *cert. denied,* 459 U.S. 909, 916, 103 S.Ct. 215, 230, 74 L.Ed.2d 171 (1982) (award of monetary damages against the state for past breach of legal duty barred by eleventh amendment). *See also Municipal Authority of Town of Bloomsburg v. Commonwealth of Pennsylvania, Dep't. of Environmental Resources,* 496 F.Supp. 686 (M.D.Pa.1980) (eleventh amendment bars relief in form of an order directing state to pay money, not as a consequence of future compliance with federal law, but as a form of monetary compensation for past breach of legal duty).

Accordingly, plaintiffs' motion for an order eliminating the Jenkins overpayment will be denied.

**Quern Notice**

▋ Plaintiffs also raise objection to the draft *Quern* notice prepared by defendant. Specifically, plaintiffs object to paragraph 2 on page 1 of defendant's draft, as set forth below:

The federal court ordered the state to notify families affected by the lack of publicity that they may try to obtain corrective payments by using state appeal procedures. The court did not decide whether any families affected by the lack of publicity are actually eligible for corrective payments under applicable federal and state law. The state took

the position in the case that corrective payments are not available in this situation. No further relief is possible from the federal court.

Plaintiffs propose that the following language be substituted for defendant's paragraph 2:

The federal court has ordered the state to notify families affected by the lack of publicity that they have the right to apply for a corrective payment from their local welfare agency.

The essence of plaintiffs' objection is that paragraph 2 as drafted by defendant informs class members of their right to apply for corrective payments, while in the same instant informing class members that all applications for corrective payments will be denied. Plaintiffs contend that the defendant's failure to draft a "neutral" *Quern* notice constitutes contempt of the Court's order in *Slaughter I.*

In *Slaughter I* the Court ordered defendant to "prepare a notice which it will send to all those members of the class who have had their benefits terminated due to receipt of a lump sum since the adoption of defendant's policy." *Slaughter I,* 598 F.Supp. at 1055. In *Slaughter III* the Court stated that defendant was to "draft a neutral notice which will be consistent with the demands of the eleventh amendment ...." *Slaughter III* slip op. at 3. Defendant's draft is anything but neutral. As framed by defendant, the draft will inevitably discourage class members from applying for corrective payments. Defendant argues that because it does not intend to award corrective payments to any class members under any circumstances, the language of paragraph 2 of its draft is immaterial in any event. Defendant has missed the point. At issue here is not whether defendant will make corrective payments, but

---

**5.** Plaintiffs contend that the Court may enjoin defendant to comply with federal law in the future, even if that compliance entails some ancillary expenditures, *citing Edelman,* 415 U.S. at 668, 94 S.Ct. at 1358. With this general proposition of law the Court wholeheartedly concurs. The difficulty with plaintiffs' argument, however, is that it would require the

Court to make a threshold determination that plaintiff Jenkins was entitled to corrective payments. The Court has made clear that this decision lies with the State. Put differently, an order requiring defendant to comply with federal law in the future would not aid plaintiff Jenkins, whose overpayment is the product of *past* allegedly illegal conduct of the defendant.

whether defendant has complied with the Court's order. Defendant was ordered to draft a neutral notice. The notice as drafted is not neutral.

Accordingly, defendant is ordered to modify its proposed *Quern* notice in the following manner. The last two sentences of paragraph 2, page 1 of defendant's draft, which state that:

> The state took the position in the case that corrective payments are not available in this situation. No further relief is possible from the federal court.

shall be stricken. Paragraph 2 of page 1 of defendant's draft shall read as follows:

> The federal court ordered the state to notify families affected by the lack of publicity that they may try to obtain corrective payments by using state appeal procedures. The court did not decide whether any families affected by the lack of publicity are actually eligible for corrective payments under applicable federal and state law.

As modified by this Order, defendant's draft *Quern* notice is approved for mailing to class members.

**Class Members' Entitlement to Corrective Payments**

Finally, plaintiffs seek an order of the Court declaring that *Slaughter I* created a substantive right to corrective payments in all class members who received and expended lump sum benefits prior to receiving adequate notice of the lump sum rule. Plaintiffs contend that defendant has predetermined that corrective payments will not be paid to class members. Plaintiffs seek the above-referenced order, not for the purpose of determining the eligibility for corrective payments of any particular class members, concededly impermissible under the eleventh amendment, but rather to guarantee that class members who do respond to the *Quern* notice will have their cases addressed by defendant on a case-by-case basis, and not via summary denial procedures.

 The Court has twice declared that *Slaughter I* did not create a substantive

right to corrective payments in any class members. Under the eleventh amendment, that decision rests entirely with the state. The purpose of the Court's order was simply to notify class members that there are existing state administrative procedures which they may wish to pursue. *See, e.g., Quern v. Jordan,* 440 U.S. 332, 349, 99 S.Ct. 1139, 1149, 59 L.Ed.2d 358 (1979). Thus, in *Slaughter II* the Court declared that "[*Slaughter I*] did not order the defendant to pay retroactive AFDC benefits to any class members," 605 F.Supp. at 1248, and in *Slaughter III* it was stated that the "Court did not intend ... to bind the defendant to make corrective payments...." Slip op. at 3. To the extent that plaintiffs seek an order declaring that class members are entitled to corrective payments, plaintiffs' motion will be denied. That decision rests with the state. *Slaughter II*, 605 F.Supp. at 1248. In rendering those decisions, however, the state is obligated to consider each class member's application for corrective payments on the merits. Defendant has stated in open court that it will afford class members a case-by-case treatment of their claims. Accordingly, defendant is ordered to assess each class member's claim for corrective payments on the factual merits. The precise form which this review will take is best left to the state. It is to be hoped that future treatment of class members will be marked by some modicum of understanding and compassion, as befits a department dedicated to addressing the most basic human needs. At the very least, defendant can be expected to assure that all questions which class members may have are fully addressed.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED that:

1. plaintiffs' motion for an order holding defendant in contempt is denied;

2. defendant is directed to modify the publicity notice as set forth in this Order at such time as the current supply of printed notices is exhausted;

3. plaintiffs' motion for an order requiring defendant to eliminate the overpayment to Kathryn Jenkins is denied;

4. defendant is directed to treat the Jenkins overpayment as one owing to agency error if and when recoupment is made;

5. defendant's proposed *Quern* notice as modified by this Order is approved for distribution to class members in the manner set forth in the Court's Order of December 10, 1984; and

6. defendant is directed to consider class members applications for corrective payments on a case-by-case basis.