**Sharon SLAUGHTER on Behalf of herself and her minor child, Toni Slaughter; Helen Stewart; Jennifer Ayers; and Kathryn Jenkins, Appellees,**

v.

**Leonard LEVINE, in his capacity as Commissioner of the Minnesota Department of Public Welfare, Appellant.**

**Nos. 85–5143, 85–5437.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1986.

Decided Sept. 10, 1986.

Beverly Jones Heydinger, St. Paul, Minn., for appellant.

Mary G. Grau, Minneapolis, Minn., for appellees.

Before ARNOLD, Circuit Judge, TIMBERS,[*] Senior Circuit Judge, and FAGG, Circuit Judge.

ARNOLD, Circuit Judge.

This is a class action challenging several aspects of the Minnesota Department of Public Welfare's treatment of "lump-sum" income in administering the jointly funded federal-state Aid to Families with Dependent Children (AFDC) program established by the Social Security Act, 42 U.S.C. § 601 *et seq.* The defendant, Leonard Levine, who was sued in his capacity as Commissioner of the Minnesota Department of Public Welfare (DPW), raises two issues on appeal: whether the District Court[1] erred in holding that the defendant failed to give advance notice of its changed lump-sum policy as required by federal regulations, and whether the District Court's order that the defendant provide plaintiff-class members with notice relief similar to that in *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), is inappropriate here or in conflict with the state sovereign immunity established by the Eleventh Amendment. Named plaintiff Kathryn Jenkins also appeals, arguing that the District Court erred in considering itself barred by the Eleventh Amendment from enjoining the defendant from recouping payments made to Jenkins that were inconsistent with the new lump-sum rule.

We affirm the District Court's decision that the defendant failed to provide advance notice of the changed lump-sum policy adequate to meet federal requirements. We conclude that defendant Levine's arguments concerning *Quern* notice have been in part rendered moot while this appeal was pending, and that, to the extent that they are not moot, they are without merit.

Finally, we agree with Kathryn Jenkins that the injunctive relief she seeks does not violate the Eleventh Amendment.

## I. BACKGROUND

### A. The Lump-Sum Rule

Lump-sum income is income from a nonrecurring source, such as a gift, inheritance, or, in some cases, an insurance settlement. 45 C.F.R. § 233.20(a)(3)(ii)(F); DPW Instructional Bulletin # 82–3, Attachment 13. Generally, the amount of money to which a family is entitled under the AFDC program is determined by deducting the family's income, if any, from a state-determined standard of need for a family of its size. Until 1981, when an AFDC recipient received a lump sum that caused the recipient's income to exceed his or her standard of need, the recipient was ineligible for benefits in the month of receipt. However, as soon thereafter as the lump sum was exhausted, it was no longer considered available income, and the recipient again became eligible for benefits.

Then, in the Omnibus Budget Reconciliation Act of 1981 (OBRA), Congress, concerned that this practice did not encourage AFDC beneficiaries to use lump-sum income on ordinary living expenses, amended the Social Security Act to require participating states to adopt a stricter lump-sum policy. See Report of the Committee on the Budget, S.Rep. No. 97–139, 97th Cong., 1st Sess. 505 (1981), *reprinted in* 1981 U.S.Code Cong. & Admin.News 396, 771; *Faught v. Heckler,* 736 F.2d 1235, 1236–37 (8th Cir.1984). The amendment provided that a lump-sum payment to an AFDC recipient would be considered income available to the recipient for the month of receipt and for a specific number of succeeding months, rendering the recipient ineligible for those months. 42 U.S.C. § 602(a)(17). The total number of months

---

[*] The Hon. William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

[1] The Hon. Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

of ineligibility is calculated by dividing the lump sum by the recipient's standard of need. *Id.;* 45 C.F.R. § 233.20(a)(3)(ii)(F).[2] For example, if a family with a $500 per month standard of need received a $2,000 lump sum, and no other countable income, it would be ineligible for AFDC benefits for four months. Through this mechanism Congress hoped to force recipients to use their lump sum in the same manner as they would have used AFDC benefits.[3]

DPW responded to the 1981 amendment by adopting the lump-sum policy challenged here. On September 18, 1981, DPW sent a letter outlining the new lump-sum policy and other changes wrought by OBRA to persons then receiving AFDC. The letter indicated that the lump-sum rule would go into effect on October 1, 1981; however, as a result of litigation, the rule did not actually become effective until February 1, 1982. DPW adopted a policy of providing AFDC applicants and recipients an oral explanation of the lump-sum rule when they reported receipt of a lump sum or when their circumstances indicated that receipt of a lump sum was likely.

In 1984, Congress again amended 42 U.S.C. § 602(a)(17), giving states the option of recalculating the period of ineligibility caused by receipt of a lump sum in three situations: where an event occurs during a month of ineligibility that, had the family been receiving benefits, would have changed the amount of aid payable that month (e.g., the state standard of need increases); where the income has become unavailable for reasons beyond the family's control (e.g., theft of the lump sum); and where the family incurs medical expenses. Pub.L. No. 98–369, § 2632(a), 98 Stat. 494, 1141 (1984). DPW has exercised this option, effective August 1985.

### B. District Court Proceedings

The plaintiffs filed this action in July 1983. They challenged both the substance of the lump-sum rule and the adequacy of the defendant's advance notice of the rule. Defendant Levine filed a third-party complaint against Margaret Heckler, Secretary of the United States Department of Health and Human Services (HHS), claiming that HHS's lump-sum regulations are partially invalid but that DPW was constrained to comply with them or forfeit federal funding.

On December 11, 1984, the District Court ruled on the plaintiffs' motion for class certification and the parties' cross-motions for summary judgment. 598 F.Supp. 1035 (D.Minn.1984). The Court certified a plaintiff class consisting of individuals in Minnesota otherwise eligible for AFDC who

**2.** As amended in 1981, the statute stated in pertinent part:

> A State plan for aid and services to needy families with children must— ...
> provide that if a person specified in paragraph (8)(A)(i) or (ii) receives in any month an amount of income which, together with all other income for that month not excluded under paragraph (8), exceeds the State's standard of need applicable to the family of which he is a member—
> (A) such amount of income shall be considered income to such individual in the month received, and the family of which such person is a member shall be ineligible for aid under the plan for the whole number of months that equals (i) the sum of such amount and all other income received in such month, not excluded under paragraph (8), divided by (ii) the standard of need applicable to such family, and
> (B) any income remaining (which amount is less than the applicable monthly standard) shall be treated as income received in the first

> month following the period of ineligibility specified in subparagraph (A)[.]

42 U.S.C. § 602(a)(17).

**3.** HHS's regulations implementing the statutory change provided a narrow exception to application of the new lump-sum formula in "life-threatening circumstances." The regulation stated:

> A State may shorten the period of ineligibility where it finds that a life-threatening circumstance exists, and the non-recurring income causing the period of ineligibility has been or will be expended in connection with the life-threatening circumstance. Further, until that time the non-recurring income must have been used to meet essential needs and currently the assistance unit must have no other income or resources sufficient to meet the life-threatening circumstance.

45 C.F.R. § 233.20(a)(3)(ii)(D) (1982). The regulation was replaced when Congress enacted the 1984 amendments to 42 U.S.C. § 602(a)(17) discussed *infra,* p. 292.

had been or would be found ineligible for AFDC for a set number of months under the lump-sum rule, and whose lump sum had or would become unavailable before their ineligibility expired. *Id.* at 1041. Turning to the summary-judgment motions, the Court first rejected the plaintiffs' claim that the new lump-sum policy violated the Social Security Act, specifically 42 U.S.C. § 602(a)(7),[4] because under it DPW presumed that a lump sum was available to the recipient for a predetermined number of months, rather than considering whether the lump sum was actually available to the recipient. The District Court concluded that when Congress enacted the 1981 amendment, it had determined to depart from the general practice of considering only available income; it decided to force AFDC recipients to budget their lump sum for use on necessary living expenses by requiring that the lump sum be considered available whether or not it is expended before the ineligibility period expires. 598 F.Supp. at 1049. The District Court further held that the plaintiffs' other challenges to the substance of the lump-sum rule, based on the Equal Protection and Due Process Clauses of the Fifth and Fourteenth Amendments, were also without merit. *Id.* at 1052–55.[5]

However, the District Court agreed with the plaintiffs that the defendant had failed to provide adequate advance notice of the lump-sum rule, violating 45 C.F.R. § 206.-10(a)(2)(i). The Court interpreted this regulation to require advance written notice to AFDC recipients of the lump-sum rule's operation. The District Court concluded that the defendant's only written notice of the rule, its September 18, 1981 letter, did not provide adequate notice of the new policy even to those who received it. It found the defendant's failure to comply with the regulation even more clearly established for class members who were not AFDC recipients in September 1981, and who had therefore received no written notice of the lump-sum policy. 598 F.Supp. at 1049–52.[6]

As a remedy for these violations, the District Court ordered the defendant to provide two kinds of notice relief. First, the defendant was ordered to mail current AFDC recipients "publicity" notices explaining the mechanics of the lump-sum rule, and to include this explanation in the information provided AFDC applicants and in the materials given recipients at their semi-annual reevaluations. 598 F.Supp. at 1055. Second, the District Court, citing *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), ordered Levine to mail notices to class members whose benefits had been terminated under the lump-sum rule and in violation of the federal notice regulation to inform them of the result of the federal litigation and to inform them that they could apply to DPW for corrective payments. 598 F.Supp. at 1055.

On April 11, 1985, the District Court issued a second opinion, responding to motions by the defendant for reconsideration of its earlier opinion and order. 605 F.Supp. 1242 (D.Minn.1985). Levine contended that Kathryn Jenkins, the only named plaintiff argued to have standing to

---

**4.** Section 602(a)(7)(A) provides that state agencies:

> shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid[.]

This provision has been interpreted to require that states consider only income and resources actually available to the family. See, *e.g., Jamroz v. Blum,* 509 F.Supp. 953, 959 (N.D.N.Y.

1981). The plaintiffs argued that § 602(a)(17) must be read in conjunction with § 602(a)(7) to require that the lump sum actually be available to the recipient.

**5.** The plaintiffs have not appealed the District Court's adverse holdings on their claims concerning the substance of the lump-sum rule.

**6.** Having accepted the plaintiffs' claim that the defendant failed to provide notice required by federal regulation, the District Court did not reach the plaintiffs' constitutional challenge to the adequacy of the State's notice to recipients.

raise the publicity-notice issue,[7] did not in fact have such standing because she had received DPW's September 1981 letter. The District Court disagreed, citing the inadequacies it had found in the notice provided by the September 1981 letter. 605 F.Supp. at 1246–47. The District Court reiterated its position that 45 C.F.R. § 206.-10(a)(2)(i) required advance written notice of the new policy, and its conclusion that *Quern* notice relief was proper and consistent with Eleventh Amendment requirements. 605 F.Supp. at 1247–49. Finally, the District Court granted Levine's motion for reconsideration in one respect: the Court ordered HHS, the third-party defendant, to pay the federal share of any benefits paid to class members as a result of the Court's decision. *Id.* at 1249–50.[8]

In May 1985, Levine appealed to this Court and moved the District Court to stay the portion of its December 10 and April 11 orders concerning *Quern* notice relief. The District Court denied this motion in June 1985. Civ. No. 4–83–579 (D.Minn. June 13, 1985). The State did not request a stay from this Court.

The District Court issued a fourth opinion in November 1985, this time ruling on the plaintiffs' motions for contempt and for supplemental relief. 621 F.Supp. 509 (D.Minn.1985). The District Court refused to cite Levine for contempt, but ordered modifications in the DPW-prepared lump-sum rule publicity notices and *Quern* notices, upholding objections made by the plaintiffs. *Id.* at 511–13, 514–15. The District Court also refused on Eleventh Amendment grounds to declare that class members who spent their lump sum before receiving notification of the new rule are entitled to corrective payments from DPW. *Id.* at 515. Lastly, the Court denied Ka-

thryn Jenkins's request that it order the defendant to cease efforts to recoup AFDC benefits paid her during her lump-sum rule ineligibility period. Jenkins's AFDC benefits were continued by DPW during this period pending Jenkins's administrative appeal of her termination under the lump-sum rule. *Id.* at 513–14. Levine characterizes these payments as "overpayments" caused by agency error, and seeks to recoup them by withholding one per cent. of Jenkins's AFDC benefits each month. See Minn. Stat. § 256.73, subd. 6. The District Court refused to enjoin this recoupment because it believed that to do so would violate the Eleventh Amendment. 621 F.Supp. at 513–14. Jenkins's appeal from this order was consolidated with Levine's appeal.

## II. NOTICE OF THE LUMP–SUM RULE

Defendant Levine contends that advance written notice of the lump-sum rule was not required by federal regulation. Levine further argues that even if some written notice were necessary, DPW's September 18, 1981 letter fulfilled this requirement. We disagree with the defendant on both points.

### A. Advance Written Notice

The regulation interpreted by the District Court to require advance written notice states:

Applicants shall be informed about the eligibility requirements and their rights and obligations under the program. Under this requirement individuals are given information *in written form, and orally as appropriate* about coverage, conditions of eligibility, scope of the program, and related services available, and

---

7. There were three named plaintiffs in the suit: Sharon Slaughter, Helen Stewart, and Kathryn Jenkins. Sharon Slaughter, the original named plaintiff, accepted a settlement and dropped out of the suit before the District Court issued its first opinion. 598 F.Supp. at 1039 n. 2. Helen Stewart lacked standing to raise the notice issue because she did not expend any of her lump sum until *after* she was fully informed of the lump-sum policy by her caseworker. 598 F.Supp. at 1043; 605 F.Supp. at 1245 n. 3. (A

fourth plaintiff, Jennifer Ayers, also intervened in the suit, but apparently was no longer a participant when the District Court issued its first opinion.)

8. The Secretary of HHS filed an appeal of this portion of the District Court's order, but subsequently withdrew it. Consequently, HHS did not participate in any fashion on this appeal.

the rights and responsibilities of applicants for and recipients of assistance. Specifically developed bulletins or pamphlets explaining the rules regarding eligibility and appeals in simple, understandable terms are publicized and available in quantity.

45 C.F.R. § 206.10(a)(2)(i). (Emphasis added). It is not disputed that this regulation applies to the lump-sum rule, since the rule clearly involves a "condition of eligibility." Instead, the issue here is what sort of notice the regulation mandates, and, as the District Court correctly observed, the few cases that discuss 45 C.F.R. § 206.-10(a)(2)(i) provide little guidance on this point. See 598 F.Supp. at 1050 and cases cited therein.

Levine's position is that the notice regulation is satisfied by DPW's policy of informing an AFDC recipient of the lump-sum rule and its operation when the recipient reports receiving or appears likely to receive a lump sum. He characterizes the language of the notice regulation as "quite general," maintaining that its purpose is to inform new applicants of the availability of the AFDC program. Appellant's Brief at 24. The new lump-sum rule, the defendant concludes, presents a case in which oral notice is "appropriate," and in which written notice is therefore unnecessary.[9]

■ We begin our consideration of the question by noting that, as the District Court observed, 605 F.Supp. at 1247, the language of the regulation seems plainly to require written notice in all cases. The regulation states that individuals are to be provided information "in written form, *and* orally as appropriate" (emphasis added), *not,* as defendant Levine seems to argue, "in written form, *or* orally as appropriate." The regulation on its face contemplates that in appropriate cases oral notice will be given as a supplement to written notice, not that it represents an alternative to written notice. *Id.*

■ Even were it true that oral notice may replace written notice in appropriate cases, we agree with the District Court that, if the notice regulation is to serve its purpose, the oral notice provided by the defendant cannot be considered "appropriate" notice.

We think it crucial that AFDC recipients receive some form of advance notice of the changed policy towards lump sums and its operation.[10] Without advance notice, an AFDC beneficiary is unlikely to budget a lump sum according to the new rule's rigid formula. AFDC recipients live at a subsistence level; they are likely to have unpaid bills and basic needs not entirely met by AFDC. Thus, an AFDC recipient faces considerable pressure to make use of a lump sum as soon as it is received. 598 F.Supp. at 1051. In addition, it is important to remember that before the new rule was adopted, lump-sum recipients could reapply for benefits as soon as their lump sum was exhausted. Thus, a lump-sum recipient without notice of the new rule is very likely to spend most or all of a lump sum before learning of the rule's strict budgeting requirements, particularly when the recipient is familiar with the prior poli-

**9.** The defendant has also argued that requiring advance written notice of the rule is inconsistent with *Atkins v. Parker,* 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985). However, the question in *Atkins* was whether *due process* required advance written notice to individual food-stamp recipients of the specific impact of a statutory change on them. Here the District Court declined to reach the plaintiffs' constitutional claims concerning notice, and relied solely on 45 C.F.R. § 206.10(a)(2)(i) as the source of a notice requirement. 598 F.Supp. at 1049. *Atkins* is consequently inapposite.

**10.** It appears that the Secretary of HHS agrees that the regulation requires such advance notice

to AFDC recipients. In her response to interrogatories posed by the defendant, she states that under 45 C.F.R. § 206.10(a)(2)(i), states must provide applicants and recipients with notice "in written form, and orally as appropriate," about the general content of the rule, including their obligation to report receipt of a lump sum, the operation of the lump-sum rule, and its effect on their eligibility for benefits. A–102. She goes on to contrast this notice with notice of the specific impact of the rule upon a lump-sum recipient, which, she stresses, need not be given until the State acts to terminate or reduce the recipient's benefits. *Id.*

cy.[11] Consequently, the net result of failing to give adequate advance notice of the new lump-sum rule is to frustrate the very goal Congress sought to further in enacting the rule: encouraging recipients to budget lump sums so that they serve to replace the family's monthly AFDC check.

The importance of advance notice is heightened by the fact that the effects of the lump-sum rule on an AFDC recipient can be peculiarly drastic. In general, the AFDC program's income- and asset-related eligibility requirements reduce or cut off eligibility only if the resource is actually available to the recipient. However, the new lump-sum rule diverges from the norm, cutting off eligibility without regard, except in very limited circumstances,[12] to whether the lump sum is actually available. Thus, under the operation of most eligibility requirements, there is no point at which a family will not have either the basic support provided by the AFDC program or other financial resources that equal or surpass the AFDC standard of need. In contrast, under the lump-sum rule, where a family exhausts its lump sum before its ineligibility period expires, the family may well be left for months with insufficient resources to provide for basic necessities. To impose this situation on a family that had no advance notice of the new lump-sum rule and operated on the altogether reasonable assumption that the old policy still governed would be truly Kafkaesque.[13]

We are therefore of the view that it is not "appropriate" within the meaning of 45 C.F.R. § 206.10(a)(2)(i) to adopt a notice policy that does not inform recipients in advance of the new lump-sum rule and its operation. We turn to consider whether the oral-notice practices advocated by defendant Levine measure up to this concern. DPW's policy is not to provide all recipients with advance oral notice of the rule, but is instead to give oral notice only to individuals who report receiving a lump sum or who appear likely to their caseworker to receive a lump sum. There are, as the District Court observed, 605 F.Supp. at 1247–48, several deficiencies in this policy. First, 45 C.F.R. § 206.10(a)(2)(i) requires uniform dissemination of eligibility information to all recipients, rather than permitting notice only to recipients believed by their caseworker to need the information. Second, DPW's oral-notice policies do not reasonably assure that an AFDC recipient who gets a lump sum will have advance notice of the new rule. While recipients deemed likely to receive a lump sum may receive advance notice of the rule, it is not always possible for the recipient or his or her caseworker to anticipate the receipt of a lump sum. Even a highly competent caseworker may wrongly determine that receipt of a lump sum is not likely, forget to provide notice of the rule, or be tardy in doing so. Therefore, it is not surprising

11. Kathryn Jenkins's case illustrates this problem. Jenkins's family had on several occasions received lump sums that were treated in accordance with the old rule. Then, on October 31, 1983, Jenkins's husband received a $5,752.00 social security disability check. That same day he wrote a $3,863.75 check to make up the arrearage on the family's home mortgage, which was about to be foreclosed, and a $1,366 check to pay an overdue car-repair bill. The family spent $500 to $600 on other bills and children's clothing. Jenkins did not learn about the new lump-sum rule's budgeting requirements until she reported the disability check to welfare authorities two days after receiving it; by this time the money was all but exhausted. Under the lump-sum rule, the disability check rendered her family ineligible for AFDC benefits from October 1983 through May 1984. 598 F.Supp. at 1040, 1050.

12. Originally, the only exception was the "life-threatening" circumstances exception, *supra* n. 3, which was later replaced by the three exceptions that the 1984 amendments authorize the states to recognize, exceptions that did not become effective in Minnesota until August 1985. See *supra* p. 292.

13. The District Court noted another way in which the new rule may have drastic consequences for recipients, pointing out that by becoming ineligible for AFDC, a family may also lose benefits under other assistance programs as well. 598 F.Supp. at 1052 & n. 15. For example, medical assistance benefits are automatically supplied to AFDC recipients, Minn.Stat. § 256B.06, subd. 1 (3). Thus even a family that budgets its lump sum may actually be forced to live on less money each month than it would have had if it had not received a lump sum.

that some recipients are not advised of the new rule until they report their lump sum, or, in some instances, until they receive a termination-of-benefits n See 598 F.Supp. at 1050. As demonstrated above, notice provided at either of these points will likely come too late.[14] Finally, we also share the District Court's concern that "oral notice would be very hard to prove or disprove." 605 F.Supp. at 1247.

Levine rejoins that face-to-face oral explanations are a more effective means of communicating information about technical AFDC requirements than are written explanations. This may well be true, but it does not speak to the problem of lump-sum recipients who receive no advance oral notice under DPW's policy. Therefore, this is at best an argument that general written notice of the rule should be supplemented by the oral notice provided under DPW's policy, or, alternatively, that every recipient should be contacted by DPW and provided with advance oral notice. The latter alternative would prove a far greater strain on administrative resources than would advance written notice, and the defendant would likely find it correspondingly less appealing.

Indeed, defendant Levine argues that to require written notice here will impose an administratively unworkable requirement on DPW. The defendant contends that because the lump-sum rule and other eligibility rules are highly susceptible to change, it will be forced, under the District Court's ruling, to issue a steady stream of written notices. He adds that numerous eligibility rules, including the lump-sum rule, actually wind up affecting relatively small numbers of people. However, the Secretary of HHS, during a notice and comment period on 45 C.F.R. § 206.10(a)(2)(i) in 1978, rejected an administrative inconvenience argument like the defendant's, stating:

Although eligibility conditions change as a result of change in law, it is expected that even as instructional material is made available to agency staff regarding program eligibility changes, an informational flyer could also be prepared for public dissemination.

43 Fed.Reg. 6950 (February 17, 1978), *cited in* 598 F.Supp. at 1051 n. 13. We therefore conclude that when the notice regulation was adopted, the balance between administrative convenience and AFDC recipients' need for notice was struck in favor of providing notice.

Levine also argues that his belief that the notice regulation does not require written notice here is supported by the Secretary of HHS's responses to interrogatories posed to her by the defendant during this case. However, in none of her answers did the Secretary state that written notice is unnecessary, or that it is not necessary to provide all recipients with advance information about the lump-sum rule.[15] The Secretary did say that a state may elect to inform AFDC applicants and recipients of eligibility through methods other than "specially developed pamphlets or bulletins," A–105, but did not say that alternative forms of notice need not be written. Moreover, even were we to read the Secretary's answers to indicate that written notice is unnecessary, we would for a combination of reasons be unable to accept her view. First, because her statements concerning the regulation were made in the course of this litigation, rather than some more neutral setting (*e.g.*, in the course of rulemaking), we believe her interpretation would be entitled to relatively less deference. Additionally, such an interpretation conflicts with the plain language of the rule, and would deprive the rule of much of its significance in this context, *supra* pp. 295–97.

---

**14.** This is particularly troublesome because AFDC recipients are not required to report income until the eighth day of the following month, and then need not do so orally, but may instead submit a written report. See DPW Brochure "Monthly Reporting," A–68.

**15.** Indeed, as explained *supra* n. 10, the Secretary's responses indicate that recipients should be given advance notice of the new rule and its operation. See A–102.

In short, we agree with the District Court that 45 C.F.R. § 206.10(a)(2)(i) by its terms requires advance written notice and admits of oral notice only as a supplement, and that, if this notice regulation is to serve its purpose fully, it must require effective written notice to all AFDC recipients and applicants of the lump-sum rule, a rule which requires advance notice to achieve its underlying purpose and which can have drastic consequences for those to whom it is applied.

B. The September 1981 Letter

Defendant Levine asserts that DPW provided adequate advance written notice of the lump-sum rule when it mailed AFDC recipients its September 18, 1981 letter. The letter, which discussed 19 changes in the AFDC program resulting from OBRA, contained a paragraph discussing the new lump-sum rule.

■ As the District Court pointed out, 598 F.Supp. at 1050, members of the plaintiff class who were not on the welfare rolls when this letter was sent out did not receive it or any other written notice of the lump-sum rule. For these class members, it is clear without further inquiry that the defendant failed to fulfill his notice obligations under 45 C.F.R. § 206.10(a)(2)(i). The question, then, is whether the September 1981 letter provided the requisite notice to those class members who were AFDC recipients when the letter was mailed. We share the District Court's view that the letter was "incomplete and confusing," and therefore inadequate. 605 F.Supp. at 1246.

■ There were several deficiencies in the notice provided by the letter. First, and most important, the letter did not adequately explain the mechanics of the lump-sum rule and their inflexible operation. The letter states that under the new rule, where a family receives a lump sum that causes its income to exceed the relevant AFDC limit,

> the family will be ineligible for the month in which the lump sum was received (and possibly for a number of following months), whether or not the money is spent before the period of ineligibility has gone by.[16]

A–69.

This description, in stating that the lump sum may "possibly" render the recipient ineligible for a number of months in addition to the month of receipt, provides no indication of how strict and inexorable the rule's budgeting requirements are. The recipient is not advised of the chief feature of the rule—that it allows him or her little leeway to use a lump sum as anything other than a replacement for monthly AFDC benefits, since it imposes ineligibility for a predetermined period equal to the lump sum divided by the recipient's monthly standard of need. As established in Section II. A. of this opinion, notice of this aspect of the rule is crucial, particularly since it represents a dramatic departure from prior policy. The letter could have explained this feature with little extra effort and without unduly lengthening or complicating its discussion of the rule.[17]

---

16. The full text of the paragraph discussing the lump-sum rule is:

> Lump Sum Money: When a family receives lump sum money such as an inheritance, a Social Security back payment, insurance settlement, gift, etc., the money will be deducted from the AFDC grant, whether or not it has already been spent. If the lump sum added to other family income totals more than the AFDC maximum for that size family, the family will be ineligible for the month in which the lump sum was received (and possibly for a number of following months), whether or not the money is spent before the period of ineligibility has gone by. If the family already received an AFDC grant that month, the grant would be "recouped" by the welfare agency.

17. We note that another section of the September 1981 letter stated:

> Please note: This letter is not intended as a detailed explanation of all the changes; you must get that from your financial worker. There may be some changes which affect you which either are not mentioned at all or are mentioned only in general terms. You will receive a formal, written notice from your county welfare agency *if* and *before* any adverse action is taken; your right to appeal will be explained on that notice.

*Id.* (emphasis in original).

A further shortcoming of the letter arises from the fact that while it indicated that the rule would become effective October 1, 1981, the rule was not actually implemented until February 1, 1982. No follow-up letter was sent to report or explain this change. Recipients who got lump sums during the October-February interregnum received the lenient treatment called for under the old rule. At least for these persons, because the letter was ultimately inaccurate in reporting the rule's effectiveness date, it provided inadequate notice.

We therefore hold that 45 C.F.R. § 206.-10(a)(2)(i) required the defendant to provide AFDC recipients with advance written notice of the lump-sum rule, and that the September 1981 letter did not constitute such notice.

### III. QUERN NOTICE

The second issue raised by the defendant on appeal is whether the *Quern* notice relief ordered by the District Court was proper. Levine argues that *Quern* notice is inappropriate here for two reasons: First, he contends that notice to class members that they might apply to the State of Minnesota for corrective payments was improper and, citing *Green v. Mansour,* —— U.S. ——, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), an Eleventh Amendment violation, because, he argues, class members would in no event actually be able to obtain corrective payments. His position is that 45 C.F.R. § 233.20(a)(13)(ii), which governs recovery of overpayments and correction of underpayments, does not permit corrective payments to recipients who failed to meet eligibility requirements but were harmed by inadequate notice. He adds that, at any rate, corrective payments would be an improper remedy for inadequate notice because they would constitute a "windfall" to recipients and would result in the continuation of benefits at a level exceeding that

To the extent that this section referred to the letter's discussion of the lump-sum rule, DPW's own view of the letter supports our conclusion that it did not adequately inform recipients of the mechanics of the lump-sum rule.

authorized by Congress. Levine's second argument is that the District Court's order exceeds Eleventh Amendment constraints to the extent that the order itself creates a "substantive right" to corrective payments.

■ We conclude that the first of the defendant's arguments was rendered moot before this appeal was argued. Counsel reported to us at argument that the *Quern* notices were mailed out in November 1985. Therefore, so far as the propriety of sending this notice is concerned, there remains no live controversy between Levine and the plaintiffs on which a federal court could grant relief.

■ The defendant's second argument is not moot, since its thrust is that the *Quern* notice order not only ordered notice, but also established a right in class members to corrective payments from the State. While this argument remains live, it is not difficult to resolve. The District Court explicitly and repeatedly stated that it was not ordering the defendant to pay retroactive benefits to AFDC members, correctly observing that under *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), this would be barred by the Eleventh Amendment. See 598 F.Supp. at 1055; 605 F.Supp. at 1248–49; Opinion of June 13, 1985, slip op. at 3; 621 F.Supp. at 515. Instead, the notice approved by the District Court merely informs plaintiff-class members of the federal lawsuit's resolution and of the fact that they may apply for corrective benefits from DPW. See *Quern,* 440 U.S. at 347–48, 99 S.Ct. at 1148–49. This notice will not lead inevitably to the payment of retroactive benefits; for example, a notice recipient may decide not to apply to DPW for corrective benefits, or may be held ineligible by DPW for corrective payments because he or she received actual notice of the lump-sum rule before spending any of it.[18] Here, as in *Quern,*

18. Indeed, as noted *supra* n. 7, the District Court held that named plaintiff Helen Stewart lacked standing to raise the notice issue because she received actual notice of the rule from her caseworker before spending any of her lump sum. See 598 F.Supp. at 1043; 605 F.Supp. at 1245 n.

"the chain of causation" between the District Court's notice order and the payment of state funds for retroactive benefits "is by no means unbroken; it contains numerous missing links, which can be supplied, if at all, only by the State and members of the plaintiff class and not by a federal court." *Id.* at 347, 99 S.Ct. at 1148. We therefore hold that the District Court's *Quern* notice order withstands this Eleventh Amendment challenge. Any actual payments made will be the choice of the State. They are not compelled by the order of the District Court.

## IV. ENJOINING DPW RECOUPMENT

The final issue before us is whether Kathryn Jenkins is entitled to an injunction against the defendant's efforts to recoup AFDC payments made to Jenkins during her period of ineligibility under the lump-sum rule. In October 1983, Jenkins's family received and spent a lump sum without having received adequate notice of the lump-sum rule. See *supra* n. 11; 598 F.Supp. at 1050; 605 F.Supp. at 1246–47. In November 1983, Jenkins was notified that because of the lump-sum rule, her October and November benefits would be considered "overpayments," and her family would be ineligible for further AFDC benefits until May 1984. Jenkins filed a timely state administrative appeal of this decision, and her benefits were continued pending the appeal. Because the final administrative decision was issued after Jenkins's ineligibility period expired, her family's AFDC benefits were not interrupted. Instead, the Jenkins family has been charged with an "overpayment" of $5,464.00 for the ineligibility period. The defendant seeks to recoup this sum by withholding one per cent. of Jenkins's benefits each month until the full amount has been recovered. See 45 C.F.R. § 233.20(a)(13); Minn. Stat. § 256.-73, subd. 6.

■ The District Court, though it found that the defendant's failure to provide adequate notice rendered application of the lump-sum rule to her improper, concluded

that it would violate the Eleventh Amendment to enjoin the defendant's efforts to recover the alleged overpayment to Jenkins. The defendant argues that, in addition to this state-sovereign-immunity obstacle, the relief Jenkins desires is also unavailable because federal regulations indicate that inadequate notice does not warrant the remedy of permitting a recipient to keep an overpayment. We conclude that an injunction against recoupment is fully consistent with the Eleventh Amendment and is a proper remedy for the defendant's violation of the federal notice regulation.

Prospective, equitable relief is a long-recognized exception to Eleventh Amendment immunity. See *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). However, the District Court reasoned that to enjoin the defendant's recoupment efforts would be inconsistent with the Eleventh Amendment as interpreted in *Edelman v. Jordan, supra*, because it would reduce "the public fisc of the State of Minnesota ... in the amount of one percent of plaintiff's monthly benefit." 621 F.Supp. at 514. Yet, as *Edelman* makes clear, a remedy against a state ordered by a federal court does not violate the Eleventh Amendment simply because it will have fiscal consequences for the state treasury. 415 U.S. at 667–68, 94 S.Ct. at 1358. Instead, the point of *Edelman* is that the key to whether a remedy violates the Eleventh Amendment is whether "[i]t requires payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation" for the state's past breach of a legal duty. *Id.* at 668, 94 S.Ct. at 1358. The Eleventh Amendment bars "retroactive award[s] of money relief" that, whether they are labeled equitable relief or damage awards, are "in practical effect indistinguishable ... from an award of damages against the State." *Id.*

An injunction against the defendant's recoupment efforts would not run afoul of

3. DPW may well deny recovery to other class members on a similar basis.

these strictures, because DPW has already paid Jenkins the money at issue, the benefit payments it characterizes as overpayments. The remedy would not be a retroactive award of damages against the State, since it would not require the State to make compensatory payments to Jenkins. Instead, the defendant would simply be ordered to cease efforts to take back funds that it previously paid Jenkins at its own instance, rather than that of a federal court. In contrast, the Eleventh Amendment would bar ordering the defendant to repay any portion of Jenkins's benefits that it has already recovered; further, had Jenkins not continued to receive benefits during her administrative appeal, the Eleventh Amendment would prohibit ordering the defendant to make corrective payments for months in which Jenkins received no benefits. In both of these examples, ordering the defendant to make payments would constitute ordering the state to pay damages—to make compensatory payments for the State's past legal wrongs. Here, the defendant would not be ordered to make compensation, but to refrain from recovering compensation already made.

Our analysis is not altered by the fact that the mechanism that the defendant has elected to use to effect this recovery is that of withholding a portion of Jenkins's AFDC benefits each month. It is true that the injunction under consideration would force the defendant to make larger payments to Jenkins each month than he would make if allowed to reduce her benefits in order to recoup his prior payments to her. Nonetheless, such payments are not damages; they do not compensate Jenkins for the

State's past legal deficiencies. Rather, they are "a necessary consequence of compliance in the future" with the determination that the defendant provided inadequate notice of the lump-sum rule. The defendant cannot make an "end run" around a federal court's ability to order that the State not take money away from Jenkins by accomplishing recovery through paying her less AFDC benefits than she normally would receive.[19]

Having disposed of the Eleventh Amendment objection to enjoining defendant Levine's recoupment efforts, we take up the defendant's assertion that permitting Jenkins to retain benefits paid her during her ineligibility period is barred by federal regulations. The defendant first argues that the payments to Jenkins were "overpayments," as defined in 45 C.F.R. § 233.20(a)(13)(i), because Jenkins has accurately been determined ineligible for the benefits under the lump-sum rule. He continues that 45 C.F.R. § 233.20(a)(13) directs states to recover overpayments, and does not permit states to forego recovery even where the overpayment is the result of agency error rather than recipient misconduct. Therefore, the defendant concludes, while Jenkins bears no fault in causing her overpayment, the defendant is nonetheless entitled to recover it.

■ The fundamental flaw in this argument occurs in its first step: the payments to Jenkins cannot be considered an overpayment, because the defendant, having failed to provide adequate notice to Jenkins of the lump-sum rule, cannot properly invoke it against her. By failing to comply

---

**19.** *Miener v. State of Missouri,* 673 F.2d 969 (8th Cir.), *cert. denied,* 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982), a case relied upon by the District Court, 621 F.Supp. at 514, provides a further illustration of the distinction drawn here. The plaintiff in *Miener,* a girl who suffered serious learning disabilities and behavioral disorders, claimed, *inter alia,* that she had been deprived by the State of an appropriate free education in violation of the Education for All Handicapped Children Act, 20 U.S.C. § 1401 *et seq.* She sought injunctive relief ordering the State to provide her "compensatory educational services to overcome the effects of any past

denial of special educational services," *id.* at 972, as opposed to an injunction ordering that she be provided the educational services to which she would be entitled absent any past State violation. We held that this violated the Eleventh Amendment. *Id.* at 982. On the other hand, if had it been the case in *Miener* that the State had provided her proper educational services in prior years, but had determined to recover the cost of these services by withholding future educational services to which Miener was otherwise entitled, it would not violate the Eleventh Amendment to enjoin the State's withholding efforts.

with the notice regulation, DPW failed to institute a legal change in its eligibility rules. See *Kimble v. Solomon*, 599 F.2d 599, 604 (4th Cir.), *cert. denied*, 444 U.S. 950, 100 S.Ct. 422, 62 L.Ed.2d 320 (1979). Jenkins's case must be governed by the prior policy towards lump sums, and under that policy she was eligible for most or all of the benefits the defendant wishes to recoup.[20]

■ The defendant also asserts that corrective payments are an improper remedy for inadequate notice because the payments would be a "windfall" to recipients and would continue benefits at a level greater than that desired by Congress, citing *Foggs v. Block*, 722 F.2d 933, 941 (1st Cir.1983), *rev'd on other grounds sub nom. Atkins v. Parker*, 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985).

We find *Foggs* distinguishable from the present case. *Foggs* involved a due-process challenge to a state's failure to notify each food-stamp recipient individually of the reduction in that recipient's benefits that would result from a statutory change in benefit-calculation methods. The Court found it an adequate remedy to order the State to review its files to ensure that each recipient's benefits had been accurately recalculated. 722 F.2d at 941. At issue here is not individualized notice of the effect of the new rule upon each recipient, but advance notice of a rule change and the new rule's general operation. Our concern is not that such advance notice was necessary to prevent erroneous application of the lump-sum rule, but that without adequate advance notice recipients could not be expected to budget their lump sum as Congress intended, and would be left without funds to pay for necessities. Permitting retention of ineligibility-period payments by lump-sum recipients who, like Jenkins, spent their lump sums in the belief that the old rule was still in force is hardly granting them a "windfall." Other circuit courts have found it proper where the state has

provided inadequate notice of changed standards to recipients to order the restoration of benefits under the previously governing standard, see *Buckhanon v. Percy*, 708 F.2d 1209, 1216 (7th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 684 (1984), *Kimble v. Solomon*, 599 F.2d 599 (4th Cir.1979), *cert. denied*, 444 U.S. 950, 100 S.Ct. 422, 62 L.Ed.2d 320 (1979), and we agree.

We conclude that an injunction barring the defendant from recouping the payments made to Jenkins during her ineligibility period would be consistent with the Eleventh Amendment, and would, moreover, be an appropriate remedy in this case.

## V. CONCLUSION

We hold that the defendant failed to provide recipients advance written notice of the lump-sum rule required by the federal notice regulation, that the defendant's challenge to the *Quern* notice order is in part moot, and in all other regards without merit, and that an injunction against the defendant's efforts to recoup payments made to Kathryn Jenkins is consistent with the Eleventh Amendment and a proper remedy. The decision of the District Court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

FAGG, Circuit Judge, dissenting.

By focusing its attention on a general, nonspecific regulation of the Secretary of Health and Human Services (Secretary), 45 C.F.R. § 206.10(a)(2)(i), the court today concludes that the Minnesota Department of Public Welfare was legally required to give "appropriate" advance written notice of the 1981 amendment to the lump-sum rule before the agency could implement that amendment. Not only is this result not constitutionally mandated, but more importantly this result is contrary to the expressed intent of Congress.

---

**20.** Of course, the defendant could properly recoup any payments for which Jenkins was ineligible under the prior lump-sum rule.

Constitutionally, a recipient of AFDC benefits has "no greater right to advance notice of legislative change * * * than [does] any other voter[ ]." *Atkins v. Parker,* 472 U.S. 115, 105 S.Ct. 2520, 2530, 86 L.Ed.2d 81 (1985) (footnote omitted). Rather, an AFDC beneficiary, like all other citizens, is "presumptively charged with knowledge of the law," *id.* at ——, 105 S.Ct. at 2530, and has an affirmative obligation to remain informed about changes in legislative policies that may affect his or her continuing entitlement to welfare benefits, *see id.* at ——, 105 S.Ct. at 2531. Only when a recipient has no adequate opportunity to become familiar with a congressionally adopted AFDC eligibility requirement might due process be implicated. *Id.* at ——, 105 S.Ct. at 2530.

Here, the 1981 amendment to the lump-sum rule became effective in Minnesota on February 1, 1982. Kathryn Jenkins, who had no legal right to assume the lump-sum rule might not be modified, did not apply for AFDC benefits until November of 1982. The lump-sum giving rise to the present controversy was not received by her family until October of 1983. Without question, between February of 1982 and October of 1983, Jenkins had an adequate opportunity to become familiar with the applicable rule. Thus, it may be presumed that she had knowledge of the rule and its potential application to her. *See id.* at ——, 105 S.Ct. at 2530. Due process required no more, and as a result advance written notice was not constitutionally mandated.

Equally as clear, Congress did not require that Minnesota give advance written notice prior to the implementation of the 1981 amendment to the lump-sum rule. Rather, in adopting the amendment Congress expressly stated that the amendment "*shall* become effective on October 1, 1981" or "*will* become effective * * * the first month * * * after * * * the first [state legislative session] ending on or after October 1, 1981." Omnibus Budget Reconciliation Act of 1981 (Act), Pub.L. No. 97–35, § 2321, 95 Stat. 357, 859–60 (1981) (emphasis added).

The second possible effective date provided for by Congress was applicable to those states that required an opportunity to pass conforming state laws. Minnesota was such a state, and its first legislative session after October 1, 1981, ended in January of 1982. Thus, as applied to Minnesota, Congress provided that the 1981 amendment to the lump-sum rule "will" become effective on February 1, 1982.

Conspicuously absent from the Act was any suggestion that in addition to this explicit effectiveness date Congress intended to include the implicit qualification that the implementation of the amendment hinged decisively on the state providing applicants and recipients alike with "appropriate" advance written notice of the amendment's pending implementation. The court ignores the absence of such a requirement and instead seizes upon a regulation of the Secretary as a basis for requiring such notice. *See* 45 C.F.R. § 206.10(a)(2)(i). This regulation, however, which is of general applicability and was not adopted in direct response to the amendment, does not mandate that implementation of congressionally adopted eligibility requirements be preceded by advance written notice. Instead, the regulation simply requires the state to publicize generally in written form, and orally as appropriate, the AFDC program and its availability. *Id.*

However, even accepting the court's conclusion that the regulation can be read to require advance written notice prior to implementation, such a reading is, in my view, inconsistent with Congress's express statement that the amendment "will become effective" in Minnesota on February 1, 1982. To that extent, the regulation cannot be enforced. Congress could itself have required advance written notice or left the implementation of the amendment entirely to the Secretary. It did not do so but rather specifically determined the date on which the amendment would become fully effective. We have no choice but to respect that decision.

Because I believe that both constitutionally and statutorily Jenkins received all the notice she was entitled to receive, I conclude the state had every right to apply the 1981 amendment to the lump-sum rule to her situation. As a consequence, I also conclude the state has the right to recoup any overpayments that might have been made to her. In my view, the district court's decision should be reversed and the case dismissed.